DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Natalie Kertesz, appeals from a judgment entered by the Fulton County Court of Common Pleas in favor of appellees, Fulton County, the Fulton County Engineer, and the Board of Fulton County Commissioners. For the reasons that follow, we reverse the judgment of the trial court.
 {¶ 2} This lawsuit arises from a single-car motor vehicle accident involving appellant. The accident occurred at approximately 5:00 a.m., on Sunday, March 9, 2003, when appellant, while driving eastbound on County Road D, west of County Road 1-2, struck a pothole and lost control of her car. The car slid off the north side of the roadway, crossed a field, and finally came to rest when it hit an embankment. As a result of the incident, appellant suffered serious injuries, including a broken neck.
 {¶ 3} At the time of the accident, the section of the road where appellant lost control of her car was primarily dry, but with patches of ice around two large potholes that were filled with water. The potholes, which measured approximately nine feet long by two and one-half feet wide, and seven feet long by four feet wide, respectively, each had a depth of about three and one-half inches.[1] According to investigating officer Trooper Christopher DeMuth, ice developed around the potholes when water that was drawn out of the potholes by passing traffic subsequently froze on the roadway.
 {¶ 4} Appellant and DeMuth differ in their opinions as to what caused appellant to lose control of her vehicle: Appellant believes that it was the potholes, themselves, while DeMuth believes that it was the ice created by the displaced pothole water.
 {¶ 5} On July 26, 2004, appellant filed her complaint alleging that the injuries she sustained in the March 9, 2003 accident were the result of appellees' failure to keep the roadway in repair and free from nuisance. On August 15, 2005, appellees filed a motion for summary judgment. In a judgment entry dated October 17, 2005, the trial court granted appellees' motion, specifically holding as follows: "The Court finds that the only relevant and competent evidence of the cause of the accident comes from the report and testimony of Trooper DeMuth who concluded that ice on the roadway was the cause [of the accident], and not the potholes. Further, the fact that Trooper DeMuth did not report the existence of potholes at the scene of the accident indicates that they were of minimal import or that the repairs conducted in the vicinity in the days before the accident eliminated the potholes as a hazard. Further, no evidence exists that defendant had actual or constructive notice of any hazards caused by the potholes prior to the accident." Appellant timely appealed the trial court's judgment entry, raising the following assignments of error:
 {¶ 6} I. "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF FULTON COUNTY BECAUSE REASONABLE MINDS COULD CONCLUDE THAT MS. KERTESZ'S INJURIES WERE CAUSED BY FULTON COUNTY'S FAILURE TO KEEP ITS ROADS IN REPAIR."
 {¶ 7} II. "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF FULTON COUNTY BECAUSE REASONABLE MINDS COULD CONCLUDE THAT FULTON COUNTY HAD ACTUAL OR CONSTRUCTIVE NOTICE OF THE HAZARD CREATED BY THE EXISTENCE OF THE POTHOLES."
 {¶ 8} An appellate court reviewing a trial court's granting of summary judgment does so de novo, applying the same standard used by the trial court. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. Civ.R. 56(C) provides:
 {¶ 9} "* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as considered in this rule. * * *"
 {¶ 10} Summary judgment is proper where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) when the evidence is viewed most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, a conclusion adverse to the nonmoving party. Ryberg v. Allstate Ins. Co.
(July 12, 2001), 10th Dist. No. 00AP-1243, citing Tokles Son,Inc. v. Midwestern Indemnity Co. (1992), 65 Ohio St.3d 621, 629.
 {¶ 11} The moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of fact as to an essential element of one or more of the non-moving party's claims. Dresher v. Burt (1996),75 Ohio St.3d 280, 292. Once this burden has been satisfied, the non-moving party has the burden, as set forth at Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id.
 {¶ 12} Regarding appellant's particular claims against appellees, we note that political subdivisions are generally immune from liability for injuries resulting from acts or omissions made in connection with governmental or proprietary functions. R.C. 2744.02(A)(1). Exceptions to this general grant of immunity are set forth at R.C. 2744.02(B). Whether a political subdivision is entitled to statutory immunity under R.C. Chapter 2744 is a question of law for the court's determination. Conleyv. Shearer (1992), 64 Ohio St.3d 284, 292.
 {¶ 13} Appellant argues that two statutory exceptions apply to this case, R.C. 2744.02(B)(2), and R.C. 2744.02(B)(3). R.C.2744.02(B)(2) relevantly provides that political subdivisions are liable for the negligent acts of their employees when those employees are performing proprietary functions. However, the maintenance and repair of roads is expressly defined by statute to be governmental, and not proprietary. See R.C.2744.01(C)(2)(e) (defining the maintenance and repair of roads to be a governmental function); R.C. 2744.01(G)(1)(a) (expressly providing that "proprietary functions" exclude any function specified at R.C. 2744.01(C)(2)). Accordingly, we find that R.C.2744.02(B)(2) is not properly applied to the present matter.
 {¶ 14} The applicable version of R.C. 2744.02(B)(3) relevantly provides that "political subdivisions are liable for injury, death, or loss to persons or property caused by their failure to keep public roads within the political subdivision open, in repair, and free from nuisance * * *." Once the existence of a nuisance is demonstrated, a plaintiff must further establish that the political subdivision possessed actual or constructive knowledge of the nuisance. Harp v. Cleveland
Heights (2000), 87 Ohio St.3d 506, 512, quoting Vogel v. Wells
(1991), 57 Ohio St.3d 91, 97.
 {¶ 15} Appellant argues in her first assignment of error that the trial court erred in granting summary judgment because reasonable minds could conclude that appellant's injuries were caused by appellees' failure to keep the roads in repair. As indicated above, the trial court expressly found that appellant's injuries were proximately caused by ice on the roadway, and not by potholes. Appellant challenges this finding on two grounds. First, appellant argues that the trial court ignored evidence which established that a genuine issue of material fact existed as to whether the potholes caused appellant to lose control of her car. Second, appellant argues that once the trial court found that appellant lost control of her car on the ice, it ignored additional evidence showing that the accumulation of ice was, in fact, created by the potholes.
 {¶ 16} In finding that appellant lost control of her car on ice rather than on potholes, the trial court pointedly stated that the only relevant and competent evidence of the cause of the accident came from the report and testimony of Trooper DeMuth, and that DeMuth's conclusion was that ice on the roadway, and not the potholes, was the cause. In making this finding, the trial court inexplicably disregarded testimony by appellant — who was the sole eyewitness to the accident — that she hit a pothole and then lost control. Specifically, appellant stated that she recalled hitting a pothole and feeling panicky, then calm. She did not remember losing control of her car on ice. Appellant's testimony concerning the accident clearly suggests that a pothole, rather than ice, was the cause of the accident. We find that such testimony, although limited, is sufficient to establish a genuine issue of fact for determination by a jury. Accordingly, appellant's first assignment of error is found well-taken.
 {¶ 17} Appellant argues in her second assignment of error that the trial court erred in granting summary judgment because reasonable minds could conclude that appellees had actual or constructive notice of the hazard created by the existence of the potholes. We will begin our analysis of this issue by determining whether the potholes could reasonably be found to constitute a nuisance for purposes of R.C. 2744.02(B)(3). In making this determination, "the proper focus should be on whether a condition exists within the township's control that creates a danger for ordinary traffic on the regularly traveled portion of the road."Franks v. Lopez (1994), 69 Ohio St.3d 345, 348.
 {¶ 18} Under Ohio law, political subdivisions are liable for injuries caused by potholes in the roadway. "[P]hysical impediments such as potholes, are easily discoverable, and the elimination of such hazards involves no discretion, policy-making or engineering judgment. The political subdivision has the responsibility to abate them and it will not be immune from liability for its failure to do so." Id., at 349. Potholes in the road are classic examples of nuisances against which political subdivisions have the duty to protect. Walters v. City of Eaton
(March 25, 2002), 12th Dist. No. CA200-1060-12.
 {¶ 19} With respect to the specific potholes involved in this case, there is abundant evidence to show that they constituted a hazard. First, there is the testimony by appellant which strongly indicates that one of the potholes caused her to lose control of her vehicle. Second, there is testimony of Dean Boger, an employee at the County Engineer's Office, who acknowledges that the potholes presented a significant road hazard to motorists traveling down Road D. Finally, there is testimony by Deputy Mathew Smithmyer, who on the evening of March 9, 2003, responded to a call relating to a damaged vehicle in the area of appellant's accident. Upon arriving at the scene, Smithmyer learned that motorist Joshua Franck had hit one of the potholes, causing one of his tires to pop off of the rim. Franck advised Smithmyer at that time that "a few" other people had hit the same potholes and "nearly lost control." This evidence clearly satisfies appellant's burden of demonstrating the existence of a hazard.
 {¶ 20} We must next determine whether appellant has presented evidence that appellees had actual or constructive notice of the nuisance created by the potholes. There is constructive knowledge where the nuisance existed in such a way that it could or should have been discovered, that it existed for a sufficient length of time to have been discovered, and that if it had been discovered it would have created a reasonable apprehension of a potential danger. Franks, supra, at 349.
 {¶ 21} The evidence going to this issue, construed in a light most favorable to appellant, is as follows. On March 4, 2003, five days before appellant's accident, motorist Steve Slawinski drove through one of the large potholes that was in the area of appellant's accident. The pothole was surrounded by ice and snow, and was filled with water. That same day, Slawinski reported the pothole to the Fulton County Sheriff's Department.
 {¶ 22} On March 6, 2003, Steve Pope, an employee at the County Engineer's Office made some initial repairs of the potholes by filling them with cold patch material. But there is evidence to suggest that appellees knew that the repairs were not a lasting solution. County employee Boger testified that the engineer's office was aware that these same potholes required regular inspection due to a recurring "problem":
 {¶ 23} "Q. Do you know whether anyone else had done any repairs to these two potholes?
 {¶ 24} "A. Yes.
 {¶ 25} "Q. Tell me what you know about that.
 {¶ 26} "* * *
 {¶ 27} "A. It seems that they was aware that there was a problem there. In the morning they told Steve [Pope] to keep a close eye on it and make sure it's in good shape.
 {¶ 28} "Q. When you say `they,' who is `they'?
 {¶ 29} "A. Jim would be the supervisor.
 {¶ 30} "Q. Jim Meyer?
 {¶ 31} "A. Yes.
 {¶ 32} "Q. How long before March 10th was it that Jim Meyer told Steve to keep an eye on this particular location?
 {¶ 33} "A. I heard it mentioned two or three times the few days before March 10th."
 {¶ 34} As further proof that appellees had actual notice that the two potholes were a recurring problem, there is the following testimony by Deputy Smithmyer concerning his response to the March 9, 2003 incident involving motorist Franck:
 {¶ 35} "Q. When you called Mr. Meyer and said you need to bring something out here, was he at first reluctant to do so?
 {¶ 36} "A. Yes.
 {¶ 37} "Q. Why do you say that?
 {¶ 38} "A. He had — from what I can remember, he had looked at the hole earlier in the day or was made aware of the situation earlier in the day. I believe there was something to the effect that there's a gentleman that lives right in that area that drives a semi and that every time they fill it with stone or cold patch or something it breaks back out.
 {¶ 39} "Q. So Mr. Meyer said that there's some gentleman who lives in the area who drives a semi?
 {¶ 40} "A. There is a gentleman in that general vicinity right there, and I can't give you an exact address, that has a semi parked at his residence.
 {¶ 41} "Q. And Mr. Meyer told you that every time — as you put it, every time they fill it with cold patch —
 {¶ 42} "A. Seems like I recall something that every time that it's fixed or they try to fix it that it breaks back up and, you know, the stone just kind of washes out and off the side of the road."[2]
 {¶ 43} On the basis of the foregoing testimony, a reasonable jury could conclude that at the time of appellant's accident, appellees had, at least, constructive notice of the danger presented by the potholes. Accordingly, we find appellant's second assignment of error well-taken.
 {¶ 44} For all of the foregoing reasons, the judgment of the Fulton County Court of Common Pleas is reversed and the matter is remanded for further proceedings consistent with this decision and judgment entry. Appellees are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Fulton County.
Judgment Reversed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J. Pietrykowski, J. Skow, J. concur.
[1] The pothole measurements, taken just one day after the accident, were made by police in connection with their report of appellant's accident.
[2] Appellees argue that this testimony constitutes hearsay. However, because Mr. Meyer was a supervisor in the County Engineer's office, any statement by him is an admission by a party opponent, and, by definition, is not hearsay. See Evid.R. 801(D)(2).