CRABTREE et al., Appellants,

v.

COOK et al.; City of Columbus, Appellees.

[Cite as Crabtree v. Cook, 196 Ohio App.3d 546, 2011-Ohio-5612.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 10AP–343.

Decided Nov. 1, 2011.

John M. Alton & Co., L.P.A., and John M. Alton, for appellants.

Richard C. Pfeiffer, Jr., Columbus City Attorney, Lara N. Baker, City Prosecutor, and Bradley Hummel, for appellee.

---

CONNOR, Judge.

{¶ 1} Plaintiffs-appellants, W. Justin Crabtree and George W. Crabtree, appeal from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, the city of Columbus.

{¶ 2} Justin suffered serious injuries and was rendered a quadriplegic when while bicycling, he was struck by a vehicle driven by defendant Andre L. Cook. The claims and cross-claims against Cook were resolved before this appeal, and he is no longer a party to the action. The sole liability issue in this appeal is whether the city of Columbus is statutorily immune from any liability that would arise from road conditions at the site of the accident.

{¶ 3} The trial court granted summary judgment in favor of the city solely on the basis that the current language of R.C. 2744.02(B), addressing governmental liability for road conditions, does not render a political subdivision liable unless damages resulted from a "negligent failure to keep public roads in repair [or] other negligent failure to remove obstructions from public roads." R.C. 2744.02(B)(3). The trial court held that the road conditions cited as the basis for plaintiffs' theory of liability on the part of the city did not meet the requirements for holding a political subdivision liable under the statute. Because the city's motion for summary judgment was based solely on these issues pertaining to statutory immunity, all further issues regarding the city's alleged negligence, such as those related to proximate causation, were not before the trial court and will not be addressed in this appeal. Likewise, we do not address issues of law or fact pertaining to the duties of bicyclists and motorists to share the road, particularly in relation to the position of a bicycle with respect to the center of a road lane of travel.

{¶ 4} Appellants bring the following assignment of error upon appeal:

The trial court erred in granting the motion of defendant–appellee city of Columbus for summary judgment on the ground of governmental immunity.

{¶ 5} We initially note that this matter was decided in the trial court by summary judgment, which under Civ.R. 56(C) may be granted only when there remains no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, with that conclusion being adverse to the party opposing the motion. *Tokles & Son, Inc. v. Midwestern Indemn. Co.* (1992), 65 Ohio St.3d 621, 629, 605 N.E.2d 936, citing *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 375 N.E.2d 46. Additionally, a moving party cannot discharge its burden

under Civ.R. 56 simply by making conclusory assertions that the nonmoving party has no evidence to prove its case. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. Rather, the moving party must point to some evidence that affirmatively demonstrates that the nonmoving party has no evidence to support his or her claims. Id.

{¶ 6} An appellate court's review of summary judgment is de novo. *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265; *Bard v. Soc. Natl. Bank* (Sept. 10, 1998), 10th Dist. No. 97APE11–1497, 1998 WL 598092. Thus, we conduct an independent review of the record and stand in the shoes of the trial court. *Jones v. Shelly Co.* (1995), 106 Ohio App.3d 440, 445, 666 N.E.2d 316. Therefore, we have the authority to overrule a trial court's judgment if the record does not support any of the grounds raised by the movant, even if the trial court failed to consider those grounds. *Bard.*

{¶ 7} The trial court's decision in this case concludes that there remain no genuine issues of material fact because the presence of one or several potholes in the road and obstructions in the form of mud, rocks, and overgrown vegetation near the curb of the road did not constitute conditions for which the city could be liable under R.C. 723.01 (municipal authority for care and control of roadways) and R.C. 2744.02. Appellants now argue that these code sections do make the city potentially liable and that they created a duty of care toward users of the public road, including Justin, and that there is evidence in the record that supports a genuine issue of material fact regarding that breach and its proximate causation of the injuries suffered by Justin. Despite Cook's uncontroverted role in the accident, appellants assert that the city can be held jointly liable as a concurrent tortfeasor pursuant to our decision in *Harris v. Ohio Dept. of Transp.* (1992), 83 Ohio App.3d 125, 132, 614 N.E.2d 779 (the negligence of a driver does not excuse the negligence of a third party in maintaining a nuisance adjacent to the roadway).

{¶ 8} By way of affidavit and deposition testimony, the trial court examined several accounts of road conditions and the circumstances surrounding the accident. The uncontroverted facts reflected in all accounts established that on January 4, 2006, Justin rode his bicycle east on Williams Road near Groveport Road in Franklin County in company of a friend, Terry Blake. The two passed through a railroad underpass and were proceeding at moderate pace up the incline leading out from under the bridge when a vehicle driven by Cook approached, also eastbound, passed Blake, and struck Justin.

{¶ 9} Blake gave his account of the accident in two forms. First, at the scene, Blake was interviewed by Columbus police officer David Cornute, who summarized this account as part of the accident report. Cornute's recitation of Blake's description of the accident states that Blake and Justin were riding east on

Williams Road on the right side of the roadway, with Justin ahead and somewhat to the left of Blake. They were both wearing headphones and listening to music. When Blake saw Cook's Cadillac pass at approximately 50 to 55 miles per hour, Blake called to Justin to warn him of the approaching vehicle, while himself riding closer to the curb. When Blake called the warning to Justin, Justin turned his head towards Blake and in doing so swerved into the path of Cook's vehicle, which struck him.

{¶ 10} At a subsequent deposition, Blake again described the accident. After passing beneath the railroad bridge, Blake was riding as far to the right as he could, occasionally impeded by damp or muddy areas on the pavement near the curb and by overhanging vegetation. The road at that point, by Blake's description, was barely wide enough to allow a car to safely pass a bike ridden very closely to the curb. As Blake became aware of the approaching car, he called a warning to Justin and himself veered as close to the curb as he could go. Both were wearing headphones and listening to music, but Blake had left one earbud out in order to hear traffic. The site of the accident was some distance past the low point of the underpass, where large potholes were present. In contrast to the version recorded in the police report, Blake denied that Justin had veered away from the curb upon hearing Blake's warning, but rather had turned towards the curb and in fact nearly succeeded in evading the car, with the impact occurring on Justin's rear wheel. Justin was thrown onto the windshield and roof of the car and then fell on the pavement behind the car.

{¶ 11} Blake stated that he frequently rode his bicycle on this route and had observed for at least one year the steadily worsening large and deep potholes right under the railroad bridge. Blake also described with less specificity the presence of further potholes in the stretch of road between those at the low point in the underpass and the point where Justin was hit. He also described some mud and water along the curb and overhanging vegetation growing from the roadside, both of which would impede a bicyclist's ability to safely ride as close to the curb as possible to give passing cars more room.

{¶ 12} Another account in the record was presented by an independent witness, Jeffrey Mers, who gave both a deposition and a supplemental affidavit. Mers testified that he was traveling west on Williams Road on the day in question and witnessed the accident. As he approached the railroad underpass, he saw two bicyclists traveling east and an eastbound vehicle, which he identified as Cook's Cadillac, emerging from beneath the bridge at an excessive rate of speed and overtaking the bicyclists. One bicyclist was riding towards the middle of the street and the trailing bicycle was closer to the curb. The trailing rider looked back over his shoulder, saw the approaching car, and yelled a warning while moving closer to the curb. Mers observed the subsequent events in his rear-view

mirror as he met and passed the oncoming vehicles. He saw the leading bicyclist make a hard right turn towards the curb, but his bike was struck by Cook's oncoming car, and the rider was thrown up and over the roof of the car.

{¶ 13} Mers testified that as he approached the bicyclists, he realized that they were at severe risk of being hit because of (1) the narrowness of the road, (2) the fact that Mers could move only slightly to his right to increase clearance for the oncoming combination of vehicles, and (3) the speed of Cook's Cadillac. Because Mers observed the actual accident in his rear-view mirror, he was able to note that Cook's brake lights never came on until after the impact. His assessment that Cook was driving too fast was based in part upon the fact that Cook's Cadillac was "bouncing" as it emerged from the underpass.

{¶ 14} In his supplemental affidavit, Mers specified that no more than ten seconds lapsed from the time Justin swerved around the pothole beneath the bridge and the time Justin attempted a right turn towards the curb when warned of Cook's approaching car. At the time of impact, Justin's rear wheel was about three and one-half feet from the right-hand curb of the eastbound lane. Mers further specified that after stopping to render aid he observed that mud was collected in the curb of the eastbound lane along most of the length of road involved, and it extended 12 to 14 inches from the curb.

{¶ 15} A diagram prepared in conjunction with the deposition and marked by Mers indicated that the impact between Cook's car and Justin occurred approximately 250 feet from the edge of the railroad bridge, across from a curb cut in Williams Road leading to a commercial driveway for an establishment referred to as the Key Club. In his later supplemental affidavit, Mers indicated that the hand-drawn diagram attached to his deposition was inaccurate because of the distorted scale of the drawing, and his affidavit clarifies that his best recollection of the location of impact was approximately 150 feet east of the railroad bridge and therefore some distance west of the Key Club driveway.

{¶ 16} Another eyewitness, Josh McGee, who also observed the accident as a westbound driver on Williams Road, placed the accident more than 244 feet from the edge of the overhead railroad bridge, again based upon the position of driveway cuts along this part of the road.

{¶ 17} The affidavit of investigating officer Cornute describes his observations of the accident scene. Cornute stated that he observed no overhanging vegetation on the right-hand side of the roadway that would have impeded Justin or Blake from riding close to the curb. Cornute observed no obstructions or defects in the surface of the roadway at the scene of the impact beyond an intermittent damp and occasionally muddy strip immediately next to the curb.

{¶ 18} To establish liability on the part of the city, appellants must show that the city owed Justin a duty of care, that it breached that duty, and that the breach proximately caused his injuries. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 285, 423 N.E.2d 467. The present case, however, was submitted for summary judgment by the city solely on the arguments related to governmental immunity, and the trial court had before it neither evidence nor arguments relating to the other elements of the negligence claim.

{¶ 19} In *Colbert v. Cleveland,* 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, the Supreme Court of Ohio set forth the law regarding tort liability for municipalities:

Determining whether a political subdivision is immune from tort liability pursuant to R.C. Chapter 2744 involves a three-tiered analysis. The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function. However, that immunity is not absolute.

The second tier of the analysis requires a court to determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability. At this tier, the court may also need to determine whether specific defenses to liability for negligent operation of a motor vehicle listed in R.C. 2744.02(B)(1)(a) through (c) apply.

If any of the exceptions to immunity in R.C. 2744.02(B) do apply and no defense in that section protects the political subdivision from liability, then the third tier of the analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability.

(Citations omitted.) Id. at ¶ 7–9.

{¶ 20} Municipalities generally are charged with the "care, supervision, and control of the public highways, streets * * * within the municipal corporation," R.C. 723.01, and that section further provides that liability for losses resulting from a failure to perform this responsibility is defined and limited by R.C. 2744.02. The city now claims immunity from this general duty under R.C. 2744.02(B)(3):

(B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:

* * *

(3) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads, except that it is a full defense to that liability, when a bridge within a municipal corporation is involved, that the municipal corporation does not have the responsibility for maintaining or inspecting the bridge.

{¶ 21} This current version of R.C. 2744.02(B)(3) contains amendments enacted by Am.Sub.S.B. No. 106, effective April 9, 2003. Prior to these amendments, the section provided that political subdivisions were "liable for injury, death, or loss to person or property caused by their failure to keep public roads * * * open, in repair, and *free from nuisance.*" (Emphasis added.) The Ohio legislature thus replaced the phrase "free from nuisance" with "other negligent failure to remove obstructions," in a "deliberate effort to limit political subdivisions' liability for injuries and deaths on their roadways." *Howard v. Miami Twp. Fire Div.*, 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 311, ¶ 25, 26. The city argues in the case before us that as a result of this change in statutory language, the defects or dangerous conditions affecting the roadway that appellants claim contributed to the accident did not form a basis for liability, because they do not rise to a level of "obstructions" under R.C. 2744.02(B)(3).

{¶ 22} The city further argues that potholes in particular were discussed as "nuisances" in a preamendment Supreme Court case, creating an inference that in removing the words "free from nuisance" from the statute, the legislature intended to eliminate liability for damages resulting from the existence of potholes in municipal streets: "Classic examples of nuisances include a malfunctioning traffic light, a pothole in the roadway, or an overhanging tree limb." *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 30, 697 N.E.2d 610. In addition to *Cater,* the city cites several other decisions in Ohio that have discussed pothole liability on the basis of nuisance: *Dickerhoof v. Canton* (1983), 6 Ohio St.3d 128, 451 N.E.2d 1193; *Kertesz v. Fulton Cty.*, 6th Dist No. F–05–026, 2006-Ohio-3178, 2006 WL 1719856; *Walters v. Eaton* (Mar. 25, 2002), 12th Dist. No. CA2001–06–012, 2002 WL 449552; *Pointer v. Akron* (July 26, 1995), 9th Dist. No. 16955, 1995 WL 453375.

{¶ 23} The trial court reasoned that since potholes were often addressed as nuisances under the prior version of R.C. 2744.02(B)(3), the removal of that word from the amended statute evinces the intent to remove liability for potholes in cases arising under current law.

{¶ 24} We do not agree with the proposition that potholes and other surface conditions can never give rise to municipal liability under current R.C.

2744.02(B)(3), nor do we find that these cases, decided prior to the 2003 amendments, in fact stand for such a broad proposition.

{¶ 25} First, while these cases, pre–2003, assessed liability for potholes by considering them to be nuisances, they did so under the constraint that this was the only word the statute offered with which to begin the analysis. These cases could not have been decided under an obstruction analysis because the statute did not then suggest the word. Nothing in these discussions precludes the conclusion that some conditions may fit the definition of both an obstruction and a nuisance; in fact, most obstructions are nuisances on some level, even if not all nuisances may qualify as obstructions (such as those that merely impair visibility or distract a driver, see, e.g., *Franks v. Lopez* (1994), 69 Ohio St.3d 345, 348, 632 N.E.2d 502, the case relied on by *Cater*, 83 Ohio St.3d 24, 697 N.E.2d 610).

{¶ 26} Second, the proposed rule that potholes, accumulated mud and rocks, and overhanging vegetation could never as a matter of law rise to the level of obstructions under the statute constitutes an overly broad exclusion from liability. In *Howard*, the Supreme Court concluded that for purposes of R.C. 2744.02(B)(3) "an 'obstruction' must be an obstacle that blocks or clogs the roadway and not merely a thing or condition that hinders or impedes the use of the roadway or that may have the potential to do so." *Howard*, 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 311, ¶ 30. We do not interpret this as comprising only immovable obstacles that absolutely bar passage to motor vehicles, such as boulders or fallen trees. The extent to which a condition acts as a mere hindrance or becomes an obstacle may vary with the location, circumstances, and nature of the road-user encountering it. Nothing in *Howard* directly mandates the consideration of potholes as mere hindrances. Likewise, the possibility of overhanging vegetation along the side of the road in this case might well constitute an obstruction under *Howard*, at least to a bicycle, even where a car would brush past it without being impeded. Thus, potholes, overhanging vegetation, or a strip of mud along a curb might constitute obstructions for purposes of the bicyclists in this case, who are without question lawful users of the road.

{¶ 27} Third, none of these nuisance cases could stand for the proposition that a claim could not go forward alternatively under R.C. 2744.02, either the pre– or post–2003 version, for "negligent failure to keep public roads in repair," the alternative basis set forth in R.C. 2744.02(B)(3). This language subsists in the present version of the statute and imposes its own distinct duty of care upon the municipality. The failure to keep roads in repair "refers to maintaining a road's condition after construction or reconstruction," including the obligation to fix holes and crumbling pavement. *Bonace v. Springfield Twp.*, 179 Ohio App.3d 736, 2008-Ohio-6364, 903 N.E.2d 683, ¶ 29.

{¶ 28} The accounts of the accident set forth above at least create a genuine issue of material fact regarding the presence and effect of potholes, heavy brush on the side of the road, and a strip of mud and debris along the curb as possible contributing factors to the accident that forced Justin to ride further from the curb than would allow overtaking vehicles room to pass safely.

{¶ 29} We accordingly find that the city is not entitled to immunity in this matter upon the state of the evidence at the time of summary judgment. There remain genuine issues of material fact on the questions whether there were potholes under the railroad bridge, of sufficient size, depth, and location to force a bicyclist dangerously far from the curb, whether there was overhanging vegetation and muddy debris in the curb strip that prevented bicyclists, even if they had the opportunity to regain the curb after passing the potholes, to ride as safely and closely to the curb as possible, and whether, given the speed of Cook's vehicle, the location of the bicyclists, the narrowness of the road, and the situation of oncoming traffic, any of these conditions materially contributed to the accident and could legally form the basis for liability for the city of Columbus. We accordingly reverse the trial court's grant of summary judgment in this matter, and remand the matter for further proceedings.

Judgment reversed,
and cause remanded.

BROWN, J., concurs.

FRENCH, J., concurs in part and dissents in part.

FRENCH, J., concurring in part and dissenting in part.

{¶ 30} I respectfully concur in part and dissent in part.

{¶ 31} First, I dissent from the majority's conclusion that there remains a genuine issue of material fact concerning the presence and effect of potholes, heavy brush on the side of the road, and a strip of mud and debris along the curb. R.C. 2744.02(B)(3), as amended by the General Assembly and as interpreted by the Supreme Court of Ohio in *Howard v. Miami Twp. Fire Div.*, 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 311, provides for an exception for a political subdivision's liability for "negligent failure to remove obstructions from public roads." The term "obstruction" means "an obstacle that blocks or clogs the roadway and not merely a thing or condition that hinders or impedes the use of the roadway or that may have the potential to do so." Id. at ¶ 30. Here, as the trial court found, "[t]here is no evidence that the potholes, mud and rocks to which plaintiff refers as the cause of his accident either blocked or clogged the road, even if they hindered or impeded his use of it."

{¶ 32} Appellants also contend, and the majority agrees, that brush along the berm may have obstructed Justin's passage. As the trial court noted, however, R.C. 2744.01(H) expressly excludes berms and shoulders from the definition of "public roads." Therefore, even if there had been brush along the berm, any negligent failure by the city to remove it would not defeat immunity.

{¶ 33} For both of these reasons, I dissent from that portion of the majority's opinion concluding that a question of fact remains concerning an obstruction in the roadway. Nevertheless, I agree with the majority that we must remand this matter to the trial court because the city still could be held liable for any "negligent failure to keep public roads in repair" under the first prong of R.C. 2744.02(B)(3). That first prong, not addressed in *Howard*, 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 311, creates an independent basis for liability. See *Bonace v. Springfield Twp.*, 179 Ohio App.3d 736, 2008-Ohio-6364, 903 N.E.2d 683 (considering, independently, a township's liability for failure to repair a roadway and for failure to remove an obstruction from the roadway). Therefore, I concur in the majority's conclusion in that respect and agree that we must remand this matter to the trial court.