[Cite as *Lakota v. Ashtabula*, 2015-Ohio-3413.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| ROBERT B. LAKOTA, JR., | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2015-A-0010** |
| CITY OF ASHTABULA, et al., | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Ashtabula County Court of Common Pleas, Case No. 2014 CV 0144.

Judgment: Affirmed.

*Christopher J. Carney* and *Larry S. Klein,* Klein & Carney Co., L.P.A., 55 Public Square, Suite 1200, Cleveland, OH 44113 (For Plaintiff-Appellee).

*Michelle J. Sheehan* and *Riannon A. Ziegler,* Reminger Co., LPA, 101 West Prospect Avenue, Suite 1400, Cleveland, OH 44115 (For Defendant-Appellant).

DIANE V. GRENDELL, J.

{¶1} Defendant-appellant, the City of Ashtabula, appeals from the Judgment Entry of the Ashtabula County Court of Common Pleas, denying Ashtabula's Motion for Summary Judgment as to the issue of immunity. The issues to be determined in this case are whether a city is entitled to immunity for an accident that occurs on a public road that has ongoing repairs and whether a city passes responsibility to monitor a construction site onto another party when that party performed the construction

pursuant to the direction of the city. For the following reasons, we affirm the decision of the lower court.

{¶2} On February 20, 2014, plaintiff-appellee, Robert B. Lakota, Jr., filed a Complaint against the City of Ashtabula and Carney & Carney, Inc., dba Roto-Rooter. It alleged that Lakota was operating his motorcycle on West 9th Street in Ashtabula when he encountered a portion of the road that "had been excavated and then backfilled with gravel." As he "approached the excavated area * * * his motorcycle went into a depression in the excavated area which resulted in his being thrown from his motorcycle" and caused serious injuries to his back and hip. Lakota alleged negligence for the failure "to perform the construction in a manner which did not create a hazard to motorists."

{¶3} On March 31, 2014, Ashtabula filed an Answer, in which it raised, inter alia, the defense of immunity. Roto-Rooter filed its Answer on April 16, 2014.

{¶4} Ashtabula filed a Motion for Summary Judgment on October 31, 2014. It argued that it was immune from the claim, since the repair of the road was a governmental function and it was not negligent for failing to keep the road in repair. Ashtabula also asserted that it was not liable for the work of Roto-Rooter, an independent contractor.

{¶5} Lakota filed a December 1, 2014 Response to the Motion, arguing that there were genuine issues of material fact which precluded the grant of summary judgment. He asserted that Ashtabula was not immune since it was negligent in failing to keep public roads in repair, pursuant to R.C. 2744.02(B)(3). Attached to the Response was the Affidavit and Report of Choya Hawn, an accident reconstructionist.

He concluded that "at the time of the crash the roadway [at issue] was in a state of disrepair."

{¶6}  Ashtabula filed a Reply in Support of its Motion for Summary Judgment on December 30, 2014.

{¶7}  The following pertinent testimony and evidence were presented through the summary judgment motions and depositions:

{¶8}  The accident which gave rise to the present lawsuit occurred in an area of construction to repair a sinkhole on West 9th Street in Ashtabula.

{¶9}  James Carney, the Vice President of Carney & Carney, dba Roto-Rooter, testified that, while performing a job for Ashtabula patching West 9th Street on July 12, 2013, his employee discovered a sinkhole.  The road was excavated approximately seven to nine feet deep, and the cause of the sinkhole, an uncapped line, was repaired.  The hole was then filled with two types of material/limestone.  Following this, he drove by the area approximately twice a day to monitor/inspect the repair, which could not be paved until the fill had settled.  He inspected the hole on July 20, the day before the accident, and saw no problem.  There were two or three cones around the area on that date.

{¶10} Christopher Perry, a Roto-Rooter employee, noted that employees, including himself, checked the repair multiple times after the hole was filled, and gravel was swept up and added if needed.

{¶11} William Jepson, the City of Ashtabula Engineer, was supervising the work of Roto-Rooter on West 9th Street when the sinkhole was discovered.  Jepson determined this was an emergency and requested that Roto-Rooter repair the sinkhole

3

immediately. He explained that, although different types of fill material were used in the hole, he believed that they were appropriate for the job. Jepson remained present during the entirety of that repair. He contacted the Traffic Department to put up "rough road" signs. He did not receive any complaints about the repair before Lakota's accident.

{¶12} On July 21, 2013, at around 4 or 5 p.m., Lakota, while driving on West 9th Street, saw a "rough road" sign and then noticed a "patch"/construction area, six to eight feet wide, on the road approximately 100 feet away. He slowed his approach and when he got closer to the repaired area, he "realized there may have been some depth to it" and "swerved to the right to go around it." His tire caught on the "edge of the hole," blew out, and the motorcycle went airborne. As a result of the accident, the motorcycle was "unrideable" and Lakota suffered nerve damage and a "crushed disc."

{¶13} Kim Brewer, Lakota's girlfriend, was riding with him at the time of the accident. She saw the rough road sign ahead of the area where the sinkhole had been filled. There were no cones there at the time of the accident. Following the accident, she took pictures of the area and noted that, where the hole had been filled, there was a depression approximately six to eight inches deep, which Lakota hit.

{¶14} Ashtabula Patrolman Jay Janek responded to the scene of the accident on July 21. He did not see any cones at the site of the construction area, but was aware that there was a warning sign. After the accident, when he saw "a substantial divot there in the roadway," he requested a barricade be placed in the area. He described the "divot" as a "pothole" and noted that the area that had been backfilled had compacted.

4

{¶15} On January 15, 2015, the trial court issued a Judgment Entry, denying Ashtabula's Motion for Summary Judgment. The court held, inter alia, that Ashtabula was not immune, pursuant to the exception for immunity in R.C. 2744.02(B)(3), relating to negligent failure to keep public roads in repair, since "the question of the City's potential negligence in keeping the public road in repair is a genuine issue of material fact which remains in dispute." It held that the issue of constructive notice, whether the city had a duty to monitor the excavated area, and whether the city was liable for Roto-Rooter's negligence were all issues that remained under factual dispute.

{¶16} Ashtabula timely appeals and raises the following assignment of error:

{¶17} "The trial court committed reversible error in failing to uphold immunity to the City of Ashtabula for maintenance and repair of roads."

{¶18} Pursuant to Civil Rule 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated, (2) "the moving party is entitled to judgment as a matter of law," and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor."

{¶19} A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). The same is true regarding the determination of governmental immunity. *Cornelison v. Colosimo*, 11th Dist. Trumbull No. 2009-T-0099, 2010-Ohio-2527, ¶ 30. "A de novo review requires the appellate

5

court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision." (Citation omitted.) *Peer v. Sayers*, 11th Dist. Trumbull No. 2011-T-0014, 2011-Ohio-5439, ¶ 27.

{¶20} Ashtabula raises several issues within its sole assignment of error. First, it argues that, pursuant to R.C. 2744.02, Ashtabula is immune for the maintenance and repair of roads. It asserts that the exception to immunity under R.C. 2744.02(B)(3) relating to negligent failure to keep roads in repair, does not apply to repairs that are ongoing or in the process of being completed.

{¶21} Lakota argues that a road on which there are pending repairs does not constitute a road "in repair," and, thus, Ashtabula's negligent actions were not subject to immunity.

{¶22} In *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, the Supreme Court of Ohio interpreted the immunity statutes as setting forth a three-tiered analysis. First, pursuant to R.C. 2744.02(A)(1), a political subdivision generally is "not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." There is no question that Ashtabula is a political subdivision. "Governmental functions" include "[t]he regulation of the use of, and the maintenance and repair of, roads, highways, [and] streets." R.C. 2744.01(C)(2)(e).

{¶23} Second, the court must consider whether an exception to that immunity applies. Specifically at issue in this case is the following exception:

Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads * * *.

R.C. 2744.02(B)(3).

{¶24} "If any of the exceptions to immunity in R.C. 2744.02(B) do apply and no defense in that section protects the political subdivision from liability, then the third tier of the analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability." *Colbert* at ¶ 9.

{¶25} The issue in dispute is whether the exception in R.C. 2744.02(B)(3) applies. Ashtabula contends that this exception applies when a government entity "fails to maintain deteriorating public roads – the exception does not apply to roads under construction or being maintained and repaired."

{¶26} Regarding the term "in repair," although it is not defined in the statute, several courts have interpreted this phrase in various circumstances. "When interpreting R.C. 305.12, a statute authorizing suits against a board of county commissioners for failure to keep roads 'in proper repair,' the Ohio Supreme Court held that 'the intent of the General Assembly was to place a duty on the commissioners only in matters concerning either the deterioration or disassembly of county roads and bridges.'" *Todd v. Cleveland*, 8th Dist. Cuyahoga No. 98333, 2013-Ohio-101, ¶ 15, citing *Heckert v. Patrick,* 15 Ohio St.3d 402, 406, 473 N.E.2d 1204 (1984). The "in

7

repair" language contained in R.C. 2744.02(B)(3) has been interpreted to include "the obligation to fix holes or crumbling pavement," including repairing potholes when a road is deteriorating. (Citation omitted.) *Crabtree v. Cook*, 196 Ohio App.3d 546, 2011-Ohio-5612, 964 N.E.2d 473, ¶ 27 (10th Dist.). A city, therefore, has a duty to repair potholes that deteriorate into a potentially hazardous condition. *Todd* at ¶ 15.

{¶27} Ashtabula cites the foregoing case law in support of its claim that it is immune for the maintenance and repair of roads, unless there is a failure to repair a known deteriorating condition, which did not occur here, since the repair was in progress. However, these cases do not address the issue of whether an ongoing repair falls under the immunity exception and do not preclude the application of the exception in such circumstances. As noted in *Todd*, the "in repair" language "*include[s]*" the repairing of potholes, but *Todd* does not exclude other circumstances such as ongoing repairs. *Id.*

{¶28} In *Bonace v. Springfield Twp.*, 179 Ohio App.3d 736, 2008-Ohio-6364, 903 N.E.2d 683 (7th Dist.), cited by Ashtabula, it was held that "repair" does not create a duty "to change allegedly absurd designs such as extreme and unnecessary side slopes that were constructed (and recently reconstructed) into a road." *Id.* at ¶ 29. This case is inapplicable to the present circumstances, where the issue is not the design of the road but the condition of the road caused by a sinkhole and an incomplete repair.

{¶29} Ashtabula also cites *Shepard v. Akron*, 9th Dist. Summit No. 26266, 2012-Ohio-4695, for the proposition that the "exception to immunity for failure to repair an excavation site did not apply." This, however, is not taken in context. The *Shepard* court found that negligence in repairing the road did not apply because "Appellees have

8

failed to produce any evidence that it was negligent in repairing the road." *Id.* at ¶ 17. The issue of whether negligence was proven is different than whether the immunity exception can apply while a road is being repaired.

{¶30} While it is correct that Ashtabula was in the process of repairing the sinkhole and excavated area, it had not completed the repair. The non-permanent repair had not yet fully remedied the damaged area and, before it was paved over, created a new problem for motorists, when accepting the testimony on summary judgment that the gravel used to fill the sinkhole had created a six to eight inch depression. A repair that causes an additional danger to drivers cannot create a road that is "in repair." Both the Engineer, Jepson, and Lakota's expert stated a six to eight inch hole does not constitute a road "in good repair." While there are limited cases addressing the specific issue of whether the pertinent immunity exception applies when a road is under construction, it has been held that this is the case. *Baker v. Cty. of Wayne*, 2014-Ohio-3529, 17 N.E.3d 639, ¶ 13 (9th Dist.) (where construction "continued from day-to-day, but had not yet been completed, * * * [i]n the context of the ongoing construction project, the County could be liable for negligent failure to keep [the road] in repair under R.C. 2744.02(B)(3)").

{¶31} The grant of immunity for "maintenance and repair of roads" advanced by Ashtabula must be construed in conjunction with the exception for the negligent failure to keep roads in repair. Ashtabula essentially argues that all maintenance and repair, as government functions under R.C. 2744.01(C)(2)(e), are subject to immunity. If that were the case, the exception in question could never apply, since it relates to repair of the roads. The exceptions to immunity in R.C. 2744.02(B), specifically note that they

9

can apply to government activity that is typically a "governmental function," the whole purpose of the exceptions to immunity.

**{¶32}** Under Ashtabula's interpretation, a city could create or allow a dangerous condition during the repair of a road in disrepair; exactly what the exception to immunity attempts to prevent. It is hard to imagine why the safety of drivers and the obligation of the city would not be required during repairs.

**{¶33}** There is clearly a factual issue as to whether the road, while construction was ongoing, was "in repair." This is the case based on the testimony of Brewer and Janek regarding the existence of a six to eight inch depression in the gravel and the testimony of a resident near the construction, Betty Jo Massi, that gravel that had come loose from the hole was strewn around the area. In the absence of any law to the contrary, we agree with the trial court's conclusion that the exception to immunity can apply when the city negligently fails to keep the road in repair during ongoing construction.

**{¶34}** Ashtabula argues in its second issue that there was no negligent failure to keep the road in repair since it did not have a duty to monitor the repair site and did not have the necessary actual or constructive notice of the alleged "depression" leading to the accident. *Wilson v. Cleveland*, 2012-Ohio-4289, 979 N.E.2d 356, ¶ 23 (8th Dist.).

**{¶35}** While Ashtabula argues that Roto-Rooter, as a contractor, assumed the duty to monitor the area of the repair, the facts support a conclusion that Ashtabula was not immune from negligence for failing to ensure that the ongoing construction area was "in repair."

**{¶36}** Facts presented upon summary judgment can support a conclusion that Roto-Rooter was an employee/agent, pursuant to R.C. 2744.01(B) (an employee is "an * * * agent, [or] employee * * *, whether or not compensated or full-time or part-time, who is authorized to act and is acting within the scope of the officer's, agent's, employee's, or servant's employment for a political subdivision"). Pursuant to R.C. 2744.02, the city is responsible for the acts of its employees for the purposes of immunity.

**{¶37}** "[A] party is classified as an independent contractor, rather than an employee or agent, based upon the ability of the political subdivision to control the work to be performed", i.e., "[w]hen a party agrees to produce some end product or result without the other political subdivision having any right to control the method of accomplishing the specific work/services to be performed." *Trucco Constr. Co. v. Fremont*, 6th Dist. Sandusky No. S-12-007, 2013-Ohio-415, ¶ 22, citing *Councell v. Douglas*, 163 Ohio St. 292, 126 N.E.2d 597 (1955), paragraph one of the syllabus; *also LCD Videography, LLC v. Finomore*, 11th Dist. Lake No. 2009-L-147, 2010-Ohio-6571, ¶ 70 ("[t]he principal feature which distinguishes the relationship of employer and employee from that of employer and independent contractor is the right to control the means or manner of doing the work"). A city can be liable for failing to alleviate faulty road conditions if "agents or officers actively created the faulty condition, or * * * it was otherwise caused and the municipality has actual or constructive notice of its existence." *Cleveland v. Amato*, 123 Ohio St. 575, 576, 176 N.E. 227 (1931).

**{¶38}** Jepson, the Ashtabula Engineer, testified that Roto-Rooter performed the repairs based on his direction and discretion and that he was present during the entire

11

repair process. He helped in obtaining gravel to fill the sinkhole and signage to warn motorists of the construction area. Carney also testified that Roto-Rooter performed the job "under the supervision of Mr. Jepson. We wouldn't make any moves or do anything until we asked him how he wanted us to proceed." He noted that it was "his job * * * his project." Jepson gave specific instructions regarding things such as tamping the materials. Further, while Carney believed Roto-Rooter should monitor the site, there is no indication that the city requested that this be done. Whether an individual is an independent contractor is generally a fact specific determination to be made by the trier of fact. *Bostic v. Connor*, 37 Ohio St.3d 144, 524 N.E.2d 881 (1988), paragraph one of the syllabus. There appears to be at least a genuine issue of material fact as to whether Roto-Rooter was solely responsible so that Ashtabula could not be found negligent for the failure to monitor the construction to ensure it did not create a danger to drivers. Even if Roto-Rooter was not an employee, this does not change the city's obligation to not act negligently in keeping roads in repair.

{¶39} Regarding the issue of whether Ashtabula had notice of the condition that caused the accident, a genuine issue of material fact as to constructive notice occurs when the plaintiff sets forth evidence "indicating that (1) the unsafe condition must have existed in such a manner that it could or should have been discovered, (2) the condition existed for such a length of time to have been discovered, and (3) if it had been discovered, it would have created a reasonable apprehension of potential danger * * *." *Nanak v. Columbus*, 121 Ohio App.3d 83, 86, 698 N.E.2d 1061 (10th Dist.1997), citing *Beebe v. Toledo*, 168 Ohio St. 203, 151 N.E.2d 738 (1958), paragraph two of the syllabus.

**{¶40}** Here, Ashtabula contends that it was unaware of any six to eight inch depression in the area of ongoing construction. However, there is at least a genuine issue of material fact as to whether it had constructive notice. It would appear that Ashtabula should have or could have discovered the condition, given that it was in the midst of completing a repair of a very large excavation project to fill a sinkhole. This is different than a mere pothole on the road of which the city had no knowledge. Ashtabula, and Jepson specifically, were aware that the sinkhole construction was unpaved, the repair was unfinished, and that the material used to fill the hole would settle. This alone was notice of an unsafe condition. There was also testimony that the quantity of gravel spread around the road that had come from the filled area evidenced that the depression may have been there for an extended period of time, especially given Carney's testimony that it would take more than just a day for a six to eight inch depression to form. Based on these facts, there is at least a dispute as to whether Ashtabula had constructive notice in this matter.

**{¶41}** In its final argument, Ashtabula contends that, even if the immunity exception applies, immunity should be reinstated pursuant to R.C. 2744.03's defenses. Specifically, Ashtabula argues that it was not liable for damages resulting from the "exercise of judgment or discretion in determining * * * how to use * * * equipment, supplies, materials * * * and other resources," i.e., its decision to use a certain type of fill to repair the sinkhole. R.C. 2744.03(A)(5).

**{¶42}** "It is well founded that a party who fails to raise an issue at the trial court level waives the issue on appeal." (Citation omitted.) *Fifth Third Bank v. Richards*, 11th Dist. Portage No. 2014-P-0040, 2015-Ohio-638, ¶ 26; *State ex rel. Zollner v. Indus.*

*Comm.*, 66 Ohio St.3d 276, 278, 611 N.E.2d 830 (1993). This argument was not raised by Ashtabula below, either in its Motion for Summary Judgment or subsequent Reply in Support. Thus, we decline to address it here.

{¶43} The sole assignment of error is without merit.

{¶44} For the foregoing reasons, the judgment of the Ashtabula County Court of Common Pleas, denying Ashtabula's Motion for Summary Judgment as to the issue of immunity, is affirmed. Costs to be taxed against appellant.

THOMAS R. WRIGHT, J.,

COLLEEN MARY O'TOOLE, J.,

concur.