[Cite as *Volny v. Portage Cty.*, 2022-Ohio-338.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| JOSEPH VOLNY, et al., | CASE NO. 2021-P-0085 |
| Plaintiffs-Appellees, | |
| - v - | Civil Appeal from the Court of Common Pleas |
| PORTAGE COUNTY, OHIO, et al., | Trial Court No. 2020 CV 00368 |
| Defendants-Appellants. | |

## O P I N I O N

Decided: February 7, 2022
Judgment: Affirmed

*Ralph C. Buss*, Law Offices of Ralph C. Buss, 168 East Hight Street, P.O. Box 705, Painesville, OH 44077 (For Plaintiffs-Appellees).

*John T. McLandrich*, *Terence L. Williams*, and *Frank H. Scialdone*, Mazanec, Raskin & Ryder Co., LPA, 100 Franklin's Row, 34305 Solon Road, Cleveland, OH 44139 (For Defendants-Appellants).

MARY JANE TRAPP, J.

{¶1}    Defendants-appellants, Portage County, Ohio, Kathleen Clyde, Vicki A. Kline, and Sabrina Christian Bennett (collectively, the "county"), appeal from the judgment of the Portage County Court of Common Pleas overruling their motion for summary judgment with respect to the complaint filed by plaintiffs-appellees, Joseph Volny ("Mr. Volny") and Peggy Volny ("Mrs. Volny") (collectively, the "Volnys").

{¶2} The county asserts one assignment of error, contending that the trial court erred by denying it the benefit of political-subdivision immunity pursuant to R.C. Chapter 2744.

{¶3} After a careful review of the record and pertinent law, we find as follows:

{¶4} (1) The record presents genuine issues of material fact as to whether the county negligently failed to keep a public road in repair pursuant to the exception to immunity in R.C. 2744.02(B)(3).

{¶5} (2) The county's alleged failure to repair a large hole within an asphalt-filled trench in a construction area did not involve the exercise of judgment or discretion pursuant to the defense to liability in R.C. 2744.03(A)(5).

{¶6} Thus, we affirm the judgment of the Portage County Court of Common Pleas.

**Substantive and Procedural History**

{¶7} This appeal involves whether the county is immune from liability for a motorcycle accident that occurred on Parkman Road, aka County Road 299, in Nelson Township, Portage County, Ohio.

{¶8} In June and July 2018, employees of the county engineer replaced a crossover pipe on Parkman Road in two phases. On June 13, the county employees performed phase one, which consisted of excavating a trench, installing the crossover pipe, and filling the trench with asphalt shavings. Following phase one, the county employees left the site to allow the asphalt fill to settle. On July 2 and 3, the county employees returned to the site to perform phase two, which consisted of paving the road. Parkman Road was closed when the county employees actively performed their work.

Case No. 2021-P-0085

### *The Accident*

{¶9}    In between the two construction phases, on June 28, Mr. Volny and four of his friends were riding their motorcycles around Portage County to map a route for an upcoming charity rally.  The riders eventually turned onto Parkman Road and began riding single file.  William Scopilliti ("Mr. Scopilliti"), who was the lead rider, testified that a large stretch of the road "was in definite need of repair" and contained "holes."  He stated that "all of a sudden" there was "a monster hole" that he described as "deep."  As he and the others rode past the "chuckhole," he looked in his mirror and saw Mr. Volny "face-planted in the road" with "his bike laying on the ground."  He further testified that he "hit a big chuckhole," which caused his wife, who was his passenger, to go "straight up and back down on the seat."

{¶10}   The second rider, Gregory Findura ("Mr. Findura"), testified that "all of a sudden" the riders "came up onto a lot of bad road" containing a "ditch" that "went across the entire road."  He described the "ditch" as "six inches deep with gravel in it."  After Mr. Findura "navigat[ed] [his] way through the ditch," Mr. Volny "hit the ditch" and "went down."

{¶11}   Mr. Volny was riding third in line.  He testified that he "could see they tore up the whole road, across the road" and that he observed "a dark, black line of asphalt grindings" that contained "a big hole."  He slowed down and began riding across the area.  As he did so, his front wheel hit the "big hole," at which time he was ejected from his motorcycle and landed on the ground.

{¶12}   The fourth rider, James Sobeck ("Mr. Sobeck"), testified that "[t]he road was very bad" and contained "a lot of holes."  He observed that Mr. Volny "hit this bump, his wheel turned, and he just lost control and fell over."

3

{¶13} Some of the riders testified that they saw a "bump" sign in the area but no "construction" signs.

{¶14} Following the accident, Mr. Volny was transported to the emergency room by ambulance. He sustained four broken ribs and road rash and was hospitalized for nearly a week.

{¶15} The Ohio State Highway Patrol ("OSHP") investigated the accident and took photos of the area. The OSHP traffic crash report states that Mr. Volny "was south on Parkman Road and struck a pot hole in a repair area of the roadway. [Mr. Volny] lost control overturning and ejecting the driver." The report further states that the "[r]oad surface had several pot holes, asphalt debris, sand, and repairs were being made on it" and that a "(BUMP) sign was posted prior to the area of impact." The report indicates that no citation was issued to Mr. Volny "due to road in disrepair."

### The Litigation

{¶16} In June 2020, the Volnys filed a civil complaint against the county and others[1] in the Portage County Court of Common Pleas. The Volnys alleged that Parkman Road was in a condition of "neglect, disrepair, and failed maintenance" and was "unfit and unsafe for travel" and that the county failed to fulfil its duties to inspect, maintain, and service the road. Mr. Volny sought damages for his alleged physical injuries and financial loss, and Mrs. Volny sought damages for her alleged loss of consortium.

{¶17} The county filed an answer in which it raised the affirmative defense of political subdivision immunity pursuant to R.C. Chapter 2744.

---

1. The Volnys also named Nelson Township and its three township trustees as defendants. The Volnys' claims against these defendants are not relevant to the issues on appeal; therefore, we do not discuss them.

4

{¶18} The parties exchanged written discovery, and the county took several depositions.

{¶19} The county filed a motion for summary judgment. The county first contended that the maintenance of public roadways is a governmental function under R.C. 2744.01(C)(2)(e) for which the county is entitled to immunity under R.C. 2744.02(A)(1).

{¶20} Second, the county contended that the Volnys could not establish an exception to immunity under R.C. 2744.02(B)(3), which imposes liability for "injury, death, or loss to person or property caused by" a political subdivision's "negligent failure to keep public roads in repair or other negligent failure to remove obstructions from public roads * * *." According to the county, Parkman Road was "in repair" and safe for vehicle travel following the completion of phase one. In support, the county attached an affidavit from the county engineer and the OSHP's photos of the area. The county also argued that the asphalt-filled area did not meet the Supreme Court of Ohio's definition of an "obstruction."

{¶21} Third, the county contended that even if an exception applied, its immunity was reinstated by R.C. 2744.03(A)(5), which applies "if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner." According to the county, the county engineer's decisions regarding "the methodology and materials used to install the crossover pipe" involved the exercise of judgment or discretion.

5

{¶22} Finally, the county contended that the open and obvious doctrine precluded its liability.

{¶23} The Volnys filed a brief in opposition to the county's motion for summary judgment. The Volnys conceded that the county is a political subdivision and that road maintenance is a governmental function. However, they contended that the record presented factual issues as to whether "the asphalt shavings and pothole(s) which plaintiffs claim were on Parkman Road" constituted a failure to keep the road in repair and/or a failure to remove obstructions. In support, they cited the depositions of Mr. Volny and the other riders and the OSHP's report. They also contended that "[d]eciding which potholes to fill" did not involve the exercise of judgment or discretion.

{¶24} The county filed a reply in support of its motion for summary judgment.

### The Trial Court's Judgment Entry

{¶25} The trial court filed a judgment entry overruling the county's motion for summary judgment. The trial court found that the county's maintenance of public roads was a governmental function entitling it to immunity; that the exception to immunity for "negligent failure to keep roads in repair" was applicable; and that "the activities necessary to keep the roadway in repair" did not require "the exercise of judgment or discretion in the use of equipment, tools or supplies required to complete the task." Therefore, the county was not entitled to immunity. The trial court further found that the issues regarding whether the conditions of the repaired road were unreasonably dangerous or open and obvious were in dispute and would properly be determined by the trier of fact and that reasonable minds could differ as to such determinations.

{¶26} The county appealed and presents the following assignment of error:

6

{¶27} "The lower court erred when it denied the defendants/appellants the benefit of immunity."

### Jurisdiction

{¶28} Generally, the denial of summary judgment is not a final, appealable order. *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, ¶ 9. However, the Supreme Court of Ohio has held that "[w]hen a trial court denies a motion in which a political subdivision or its employee seeks immunity under R.C. Chapter 2744, that order denies the benefit of an alleged immunity and is therefore a final, appealable order pursuant to R.C. 2744.02(C)." *Id.* at syllabus. Appellate review under R.C. 2744.02(C) is limited to the review of alleged errors that involve the denial of the benefit of an alleged immunity from liability. *Doe 1 v. Licate*, 11th Dist. Ashtabula Nos. 2018-A-0019 and 2018-A-0020, 2019-Ohio-412, ¶ 28.

### Standard of Review

{¶29} The review of a summary judgment denying political-subdivision immunity is de novo and is governed by Civ.R. 56. *Pelletier v. Campbell*, 153 Ohio St.3d 611, 2018-Ohio-2121, 109 N.E.3d 1210, ¶ 13. Pursuant to Civ.R. 56(C), summary judgment may be granted when (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Id.*

{¶30} "Since summary judgment denies the party his or her 'day in court' it is not to be viewed lightly as docket control or as a 'little trial.' The jurisprudence of summary

7

judgment standards has placed burdens on both the moving and the nonmoving party." *Welch v. Ziccarelli*, 11th Dist. Lake No. 2006-L-229, 2007-Ohio-4374, ¶ 40.

{¶31} Specifically, "the moving party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record before the trial court that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The evidence must be in the record or the motion cannot succeed. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case but must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims." *Id.*

{¶32} "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. If the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in the last sentence of Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial. If the nonmoving party fails to do so, summary judgment, if appropriate shall be entered against the nonmoving party * * *." *Id.*

### Political Subdivision Immunity

{¶33} The Political Subdivision Tort Liability Act is codified at R.C. Chapter 2744. R.C. Chapter 2744 establishes a three-tier analysis to determine whether a political subdivision is immune from liability. *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 556, 733 N.E.2d 1141 (2000).

8

Case No. 2021-P-0085

{¶34} The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or a proprietary function. *Pelletier, supra,* at ¶ 15. However, that immunity is not absolute. *Id.* The second tier of the analysis requires a court to determine whether any of the exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability. *Id.* If any of the exceptions to immunity in R.C. 2744.02(B) apply, then the third tier of the analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability. *Id.*

{¶35} In this case, the parties do not dispute that the county is a political subdivision and that it was engaged in a governmental function. Thus, our focus is on the second and third tiers of the analysis.

### "In Repair" Exception

{¶36} Our first inquiry is whether an exception to immunity applies. This case implicates R.C. 2744.02(B)(3), which provides, in relevant part, that "political subdivisions are liable for injury, death, or loss to person or property *caused by their negligent failure to keep public roads in repair* and other negligent failure to remove obstructions from public roads * * *." (Emphasis added.) The trial court found the "in repair" exception to be applicable.

{¶37} The statute does not define the phrase "in repair." The Supreme Court of Ohio has construed the word "repair" in this context to mean "'the state of being in good or sound condition.'" *Pelletier* at ¶ 19, quoting *Webster's Third New International Dictionary* 1923 (2002). In construing a statute imposing a duty on county commissioners to keep roads and bridges "'in proper repair,'" the court explained that "this language

9

created 'a duty on the commissioners only in matters concerning either the deterioration or disassembly of county roads and bridges.'" *Id*., quoting *Heckert v. Patrick*, 15 Ohio St.3d 402, 406, 473 N.E.2d 1204 (1984). In the context of roadway conditions, courts have consistently construed "in repair" to include maintaining a road's condition, such as fixing holes. *See Cerri v. Clemson Excavating, Inc.*, 11th Dist. Geauga No. 2018-G-0162, 2019-Ohio-1161, ¶ 20 (collecting cases).

{¶38} The deposition testimony of Mr. Volny and the other riders and the OSHP crash report indicates the existence of a "hole" within the asphalt-filled area on the day of the accident. This suggests the existence of "deterioration" and, thus, a road that was not "in repair." However, the county asserts several arguments in support of its contention that the "in repair" exception is not applicable.

{¶39} The county first argues that Parkman Road was "in repair" because it was not in a "state of deterioration." Rather, the county was "completing the necessary construction of a crossover pipe replacement."

{¶40} The fact that the construction project on Parkman Road was incomplete at the time of Mr. Volny's accident does not preclude application of the "in repair" exception. In *Lakota v. Ashtabula*, 11th Dist. Ashtabula No. 2015-A-0010, 2015-Ohio-3413, *appeal not accepted*, 144 Ohio St.3d 1478, 2016-Ohio-467, 45 N.E.3d 245, this court determined that a city was not entitled to immunity for an accident that occurred in an area of construction to repair a sinkhole on a public road. *Id.* at ¶ 1, ¶ 8. In that case, a motorcyclist encountered a portion of a public road that had been excavated and backfilled with gravel. *Id.* at ¶ 2. As the rider approached the excavated area, his

10

motorcycle went into a depression in the excavated area, which resulted in him being ejected and sustaining injuries. *Id.*

{¶41} We held that the "in repair" exception "can apply when the city negligently fails to keep the road in repair during ongoing construction." *Id.* at ¶ 33. Although the city "was in the process of repairing the sinkhole and excavated area, it had not completed the repair. The non-permanent repair had not yet fully remedied the damaged area and, before it was paved over, created a new problem for motorists * * *." *Id.* at ¶ 30. We stated that "[a] repair that causes an additional danger to drivers cannot create a road that is 'in repair.'" *Id.*

{¶42} We also noted that under the city's proposed interpretation, it "could create or allow a dangerous condition during the repair of a road in disrepair; exactly what the exception to immunity attempts to prevent." *Id.* at ¶ 32. We found it "hard to imagine why the safety of drivers and the obligation of the city would not be required during repairs." *Id.*

{¶43} Here, the county undertook a construction project on Parkman Road. While the record does not disclose the reason for the project, the county's characterization of it as "necessary" suggests there was some type of adverse condition. During phase one, the county excavated a trench in the road and performed a partial repair by filling it with asphalt shavings. During phase two, the county completed the repair by paving over the asphalt-filled area. Mr. Volny alleges that he struck a large hole located within the asphalt-filled trench, which occurred in between the two construction phases. Pursuant to *Lakot*a, the "in repair" exception encompasses such circumstances.

11

{¶44} Second, the county argues that any alleged issue with the road was a product of its "construction technique." According to the county, the "in repair" exception does not encompass a design or construction flaw. In support, the county cites *Bonace v. Springfield Twp.*, 179 Ohio App.3d 736, 2008-Ohio-6364, 903 N.E.2d 683 (7th Dist.), where the Seventh District held that the "in repair" exception "does not create a duty to change allegedly absurd designs such as extreme and unnecessary side slopes that were constructed (and recently reconstructed) into a road." *Id.* at ¶ 29.

{¶45} In *Lakota*, we expressly distinguished the circumstances presented in *Bonace* because "the issue [was] not the design of the road but the condition of the road caused by a sinkhole and an incomplete repair." *Id.* at ¶ 28.

{¶46} Here, the issue is also not the county's design of the road. The asphalt-filled trench was not a design feature. It was a temporary condition awaiting final repair, i.e., paving. Thus, the issue in this case is the road's condition following the county's partial repair.

{¶47} Third, the county argues that the Volnys effectively allege the existence of a "nuisance," which is no longer a valid exception to immunity. As the county accurately notes, the General Assembly amended R.C. 2744.02(B)(3) in 2003 and replaced the phrase "free from nuisance" with "other negligent failure to remove obstructions." *See Howard v. Miami Twp. Fire Div.*, 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 311, ¶ 25.

{¶48} However, the "in repair" exception existed before and after the statutory amendment, and it provides a separate, independent basis for precluding statutory immunity with respect to public roads. *See Todd v. Cleveland*, 8th Dist. Cuyahoga No.

12

98333, 2013-Ohio-101, ¶ 14 ("The terms 'in repair' and 'obstructions' exist separately under R.C. 2744.02(B)(3) and provide two separate, independent bases for precluding statutory immunity with respect to public roads"); *Crabtree v. Cook*, 196 Ohio App.3d 546, 2011-Ohio-5612, 964 N.E.2d 473, ¶ 27 (10th Dist.) ("[N]egligent failure to keep public roads in repair" is an alternative basis for liability and "imposes its own distinct duty of care"). Whether the road condition would also qualify as a "nuisance" under the prior version of the statute does not preclude application of the "in repair" exception.

{¶49} Fourth, the county argues that there is no evidence that the road was not "in repair" other than "conjecture" and the fact that an unfortunate accident occurred at the location. According to the county, the Volnys "do not cite specific construction standards or that the road had deteriorated in some way."

{¶50} As indicated above, the deposition testimony of Mr. Volny and the other riders and the OSHP crash report all suggest the existence of a "hole" in the temporary asphalt filling, which is indicative of "deterioration."

{¶51} In addition, a court's function on summary judgment "is to consider the evidence, in light of each party's evidentiary burden, to determine whether there is sufficient evidence to support the non-moving party's position that a jury could reasonably find in his favor." *Paul v. Uniroyal Plastics Co.*, 62 Ohio App.3d 277, 282, 575 N.E.2d 484 (6th Dist.1988).

{¶52} In *Lakota*, we determined there was "clearly a factual issue as to whether the road, while construction was ongoing, was 'in repair.'" *Id.* at ¶ 33. Our determination was based on the testimony of the plaintiff's girlfriend, who was riding him at the time of the accident, and that of an investigating police officer, who both indicated "the existence

13

of a six to eight inch depression in the gravel," and the testimony of a resident near the construction, who indicated that "gravel that had come loose from the hole was strewn around the area." *Id*.

{¶53} The record in the present case contains similar evidence, which supports a finding that Parkman Road was not "in repair" at the time of the accident.

{¶54} At most, the county has demonstrated the existence of *conflicting* evidence regarding the road's condition. However, a court on summary judgment "should not attempt to usurp the jury's role of assessing credibility, weighing the evidence, or drawing inferences." *Paul* at 282.

{¶55} Finally, the county argues that the Volnys cannot establish "notice of a hazard in the location of the accident," which it describes as "a prerequisite to liability" under R.C. 2744.02(B)(3).

{¶56} To establish negligence, a plaintiff must establish a duty, a breach of that duty, proximate cause, and damages. *Todd*, *supra*, at ¶ 19. Where negligence involves the existence of a hazard or defect, a duty of reasonable care does not arise unless the defendant has notice, either actual or constructive, of such hazard or defect. *Id*. at ¶ 20. Thus, whether the county had notice of Parkman Road's allegedly dangerous condition relates to its ultimate liability, i.e., whether the county was negligent.

{¶57} "The issue of whether negligence was proven is different than whether the immunity exception can apply * * *." *Lakota* at ¶ 29. "Immunity is a doctrine that provides a complete defense to a tort action. By asserting an immunity defense, the defendant does not allege that there was no negligence. The defendant is asserting that it is protected from liability for negligence by reason of R.C. Chapter 2744." *Rondy v. Richland*

14

*Newhope Industries, Inc.*, 2016-Ohio-118, 57 N.E.3d 369, ¶ 27 (5th Dist.); *Nicholson v LoanMax*, 2018-Ohio-375, 105 N.E.3d 489, ¶ 10 (7th Dist.). Therefore, whether the county had notice of Parkman Road's allegedly dangerous condition is beyond the permitted scope of this appeal, which is limited to the issue of statutory immunity.

{¶58} Even if we were to consider this issue, however, there is at least a genuine issue of material fact as to whether the county had constructive notice. For example, in *Lakota*, the city contended that it was unaware of the alleged six to eight-inch depression in the area of ongoing construction. *Id.* at ¶ 40. We found the existence of genuine issues of material fact, reasoning as follows:

{¶59} "It would appear that [the city] should have or could have discovered the condition, given that it was in the midst of completing a repair of a very large excavation project to fill a sinkhole. This is different than a mere pothole on the road of which the city had no knowledge. [The city], and [the city engineer] specifically, were aware that the sinkhole construction was unpaved, the repair was unfinished, and that the material used to fill the hole would settle. This alone was notice of an unsafe condition." *Id.*

{¶60} The record in the present case presents similar circumstances.

{¶61} In sum, the record presents genuine issues of material fact as to whether the county negligently failed to keep a public road in repair pursuant to R.C. 2744.02(B)(3). Therefore, the trial court did not err in finding the "in repair" exception to be applicable.

15

**Defense to Liability**

{¶62} Having found the "in repair" exception to immunity in R.C. 2744.02(B)(3) to be applicable, our second inquiry is whether any of the defenses to liability in R.C. 2744.03(A) apply.

{¶63} The county contends that R.C. 2744.03(A)(5) is applicable, which provides that "[t]he political subdivision is immune from liability if the injury, death, or loss to person or property *resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources* unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner." (Emphasis added.)

{¶64} The county argues that its decisions regarding "the crossover pipe construction, including the placements of signs and allocation of County resources for such construction" involved "the exercise of judgment or discretion" pursuant to R.C. 2744.03(A)(5).

{¶65} Despite the county's characterization of its activities, Mr. Volny's alleged loss resulted from the county's alleged failure to repair a large hole within an asphalt-filled trench in a construction area. According to the Supreme Court of Ohio:

{¶66} "Overhanging branches and foliage which obscure traffic signs, malfunctioning traffic signals, signs which have lost their capacity to reflect, *or even physical impediments such as potholes*, are easily discoverable, and *the elimination of such hazards involves no discretion, policy-making or engineering judgment.* The political subdivision has the responsibility to abate them and it will not be immune from liability for its failure to do so." *Franks v. Lopez*, 69 Ohio St.3d 345, 349, 632 N.E.2d 502 (1994).

16

Case No. 2021-P-0085

{¶67} Accordingly, the trial court did not err in finding that the defense to liability in R.C. 2744.03(A)(5) is not applicable.

{¶68} The county's sole assignment of error is without merit.

{¶69} For the foregoing reasons, the judgment of the Portage County Court of Common Pleas is affirmed.

MATT LYNCH, J.,

JOHN J. EKLUND, J.,

concur.