BONACE et al., Appellees,

v.

SPRINGFIELD TOWNSHIP, Appellant.

[Cite as *Bonace v. Springfield Twp.*, 179 Ohio App.3d 736, 2008-Ohio-6364.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 07 MA 226.

Decided Dec. 4, 2008.

Raymond Schmidlin Jr., and David Henderson, for appellees.

Gregory Beck, for appellant.

VUKOVICH, J.

{¶ 1} Defendant-appellant, Springfield Township, appeals the decision of the Mahoning County Common Pleas Court, which denied the township's motion for summary judgment regarding the negligent-road-repair complaint filed by plaintiffs-appellees Mary Bonace ("Bonace") and her husband. The issue on appeal is whether the township is entitled to immunity. For the following reasons, the township has immunity from Bonace's claims, and the judgment of the trial court is reversed.

### STATEMENT OF THE CASE

{¶ 2} On a clear morning in August 2005, Bonace was involved in a single-car accident on Rapp Road in Springfield Township. She was driving a four-door pick-up truck on a neighborhood road. When she encountered a portion of the road that tips to the right, her right front tire "fell off" the road and into an immediately adjacent ditch. Upon losing steering capacity and hitting a driveway apron, the truck exited the ditch and rolled multiple times across the road and into a cornfield.

{¶ 3} On December 29, 2005, Bonace filed a complaint against Springfield Township.[1] She alleged that the township had failed to provide adequate pitch, grade, berm, and width, had negligently maintained the road regarding these aspects, and had failed to warn of these problems. The complaint also stated that the township had failed to keep the road open, in repair, and free from nuisance, and these failures had directly and proximately caused an unsafe condition within the road that had caused Bonace to lose control.

{¶ 4} According to Bonace's deposition testimony, the road "tipped" to the right at the place she "fell" into the ditch, and this slope pulled or "sucked" her over to the edge line. She stated that she drove this route often and that the tipping sensation had seemed worse after the recent road repaving. Her husband measured the slope as dropping 11 inches from the crown in the center to the edge of the road.

{¶ 5} Bonace also testified that asphalt was missing from the white edge line, which appeared "chewed up" when she viewed it after the accident. Additionally, she complained that the ditch was immediately adjacent to the edge of the road and that the ditch was over 28 inches deep at its center. Her husband, an automotive mechanic, determined that the steering linkage had snapped while the vehicle was traveling in the ditch.

{¶ 6} Bonace produced an affidavit of a Rapp Road resident who stated that his daughter had been involved in a single-car accident at this same spot in August 2004 and that his sister had been involved in an accident 15 years ago in the vicinity. This resident stated that he had complained to the township about the road and noted that the Springfield Township fire chief was at the scene of his daughter's accident. His daughter submitted an affidavit confirming that her right front tire had suddenly and unexpectedly dropped into a ditch causing her to lose steering ability and to hit the driveway apron. She further disclosed that the police had investigated the accident.

---

1. Claims were also filed against various paving contractors and Mahoning County. The county was dismissed, as it was not responsible for this portion of Rapp Road, and the other claims were disposed of by settlement and/or dismissal.

{¶ 7} In addition, Bonace submitted the report of an expert on accident investigations. He reviewed another accident report from August 2004, which indicated a possible road defect. The expert stated that at the site where Bonace left the road, the asphalt is deteriorated at the outside edge of the white edge line. He measured an edge drop of 12 inches from the pavement to the land. He concluded that a drop over three and one-half inches is a hazard. He opined that although it is not always attainable, there should be two feet of berm on rural roadways.

{¶ 8} This expert also stated that the side slope was nearly five percent, which is in excess of the normal two percent slope for level straight roadways under national and state standards. He opined that the excessive side slope contributed to the hazard of the drop-off. He also noted that the lane was ten feet wide, which is sufficient but less than desirable considering the other defects. He concluded that the condition of the road should have been known to the township due to accident reports and from the Road Superintendent driving along the road.

{¶ 9} The township's long-time road superintendent was deposed. He did not agree that there was road deterioration at the edge line, claiming that any broken asphalt dropped off during the repaving project. He denied that the natural berm had changed during the repaving projects in 1997 or 2004, stated that there had never been a constructed berm, and noted that the decision to build a berm was left to his judgment.

{¶ 10} The road superintendent denied that he had ever received complaints about the condition of the road. As for prior accidents, he acknowledged hearing of only one that had occurred further south after Bonace's accident. He noted that the fire chief and his long-time assistant road crew member lived within a quarter mile of the accident scene. He also conceded that the crown was greater at the disputed site than elsewhere on the road, but he did not think it was too severe. He disclosed that if a crown is too high, his department can gradually lessen it in repaving projects, but that the road could be torn up to more quickly fix the issue.

{¶ 11} The Mahoning County chief deputy engineer testified that the county evaluates the condition of a road's edge line on a case-by-case basis and considers a deteriorated condition more important if there exists a large edge drop-off. She also stated that the slope of a road should drop one-quarter to three-eighths of an inch per foot from the center crown. She explained that the crown can get higher due to years of resurfacing. She agreed that if two similar accidents had occurred at the same spot within a year, she would have investigated the need for repair if the road were in her jurisdiction.

{¶ 12} On June 13, 2006, the township filed a motion for summary judgment, arguing that it was entitled to immunity. The township urged that it is not liable for areas outside the regularly traveled portion of the road, which includes only the space between the edge lines. The township also claimed that the expert's belief that the road has an excessive side slope was subjective and unsupported by any standards. Bonace argued that the excessive slope, the lack of a berm, the proximity of the deep ditch to the road, and the asphalt missing from the edge line were all conditions that fell under the statutory exception to immunity for failing to keep a road in repair or free from obstructions.

{¶ 13} On November 23, 2007, the trial court overruled the township's motion for summary judgment. The township filed timely notice of appeal, which is permissible under R.C. 2744.02(C). See also *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, ¶ 12 (the political subdivision can file an interlocutory appeal of the denial of summary judgment regarding its immunity defense even if the trial court stated that genuine issues of material fact remain on the issue of immunity and thus did not finally determine the immunity issue).

## GENERAL LAW

{¶ 14} The evaluation of sovereign immunity entails a three-tiered analysis. We begin with the general premise that a political subdivision is not liable for damages caused by any act or omission in connection with a governmental or proprietary function. R.C. 2744.02(A)(1). A governmental function includes the *maintenance and repair of roads*, highways, and streets. R.C. 2744.01(C)(1), (2)(e). See also R.C. 2744.01(C)(1), (2)(r) (government function includes flood-control measures, such as a ditch).

{¶ 15} The second tier in the analysis involves a determination of whether any of the exceptions to immunity apply. For instance, there is an exception to immunity for negligent performance of a proprietary function. R.C. 2744.02(B)(2). However, as Bonace concedes, her allegations concern solely governmental functions, leaving only the third exception to immunity at issue. This exception provides:

{¶ 16} "[P]olitical subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads * * *." R.C. 2744.02(B)(3).

{¶ 17} Finally, only if we find that an exception to immunity applies must we continue to the third tier of the analysis. This analysis involves the evaluation of whether sovereign immunity can be reinstated by statutorily listed specific

defenses or specific immunities, such as the discretionary defenses set forth in R.C. 2744.03(A)(3) and (5).

## ASSIGNMENT OF ERROR

{¶ 18} The township's sole assignment of error provides:

{¶ 19} "The trial court erred in denying the appellant's motion for summary judgment, as there were no genuine issues of material fact pertinent to the immunity defenses asserted by the appellants, Springfield Township, Ohio and Springfield Township Trustees."

{¶ 20} Prior to reaching the crux of the case, the township sets forth some peripheral arguments. For instance, the township seems to seek application of a former version of R.C 723.01. However, this statute refers only to municipal corporations, not townships. Regarding the applicable statute, the township argues that Bonace and the trial court improperly relied upon the wrong version of R.C. 2744.02(B)(3). Although Bonace's complaint used the old statutory phrase, "open, in repair and free from nuisance," it contained other contentions outlining her claim as well. In any event, "in repair" is still part of the statutory exception to immunity. Moreover, Bonace's response to summary judgment applied the proper statute. Finally, as the trial court gave no indication of applying the prior statute, we presume the court applied the proper version. In any event, we review a decision on summary judgment de novo and will be applying only the applicable version of R.C. 2744.02(B)(3).

{¶ 21} More substantively, the township argues that the conditions set forth by Bonace do not fall under the exception to immunity in R.C. 2744.02(B)(3) regarding the "negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads." It is important to recognize here that this language became effective on April 9, 2003, and that the prior version of this immunity exception provided governments liable for injury "caused by their failure to keep public roads * * * open, in repair, and free from nuisance." Former R.C. 2744.02(B)(3). Sub.S.B. No. 108, 149 Ohio Laws, Part I, 382, 462.

{¶ 22} Under the former version, the Supreme Court set forth a two-part test for analyzing the second tier, specifically for determining the existence of nuisance: (1) the condition alleged to constitute a nuisance creates a danger for ordinary traffic on the regularly traveled portion of the road and (2) the cause of the condition is something other than a decision regarding design or construction. *Haynes v. Franklin*, 95 Ohio St.3d 344, 2002-Ohio-2334, 767 N.E.2d 1146, ¶ 18. The court thus expressed that there could be liability for a drop between the road and the berm if this condition was the result of a failure to repair, but held that

there is no liability for such condition when it is the result of a design or construction decision made during the road's repaving. Id. at ¶ 18–20 (the court did not reach the third-tier discretionary defense to the second-tier immunity exception). See also *Franks v. Lopez* (1994), 69 Ohio St.3d 345, 346–349, 632 N.E.2d 502 (distinguishing between initial decisions to forgo the creation of a road safety feature and subsequent decisions to forgo maintenance or repair of a safeguard already erected, and stating that design is not a nuisance and is also a discretionary defense). Thus, the failure to construct a guardrail or a sign at a dangerous curve that dropped into a' river did not constitute an exception to immunity, but the failure to maintain a sign's reflectivity was previously actionable. *Franks,* 69 Ohio St.3d. at 350, 632 N.E.2d 502.

{¶ 23} As aforementioned, after these cases, the legislature acted to narrow the exception to immunity, thus providing more protection to political subdivisions. The legislature added that the political subdivision's failure had to be negligent; the new statute maintained "in repair" but changed "nuisance" to "failure to remove obstructions." See R.C. 2744.02(B)(3). Besides changing the language of the roads exception itself, the legislature added a definition of public roads to be used when applying that exception. This new definition specifies that a public road does not include berms, shoulders, rights-of-way, or any nonmandated traffic-control devices. See R.C. 2744.01(H) (effective April 9, 2003).

{¶ 24} In analyzing the obstruction portion of the new statute, the Supreme Court recently explained that "nuisance" was substituted with "obstruction" in order to further limit government liability. *Howard v. Miami Twp. Fire Div.,* 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 311, ¶ 29. Thus, an obstruction was defined as an obstacle that blocks or clogs the roadway, as opposed to a mere condition that hinders or impedes the use of the roadway or that may have the potential to do so. Id. at ¶ 30. Thus, an icy coating on a curved road that resulted from a fire department's controlled burn did not constitute an obstruction. Id.

{¶ 25} In applying the new statute, we begin with the allegedly excessive side slope. Initially, we dispose of the township's argument that the expert's opinion on the slope is without support. This argument is without merit for various reasons. The expert stated that the road's side slope was excessive because a cross slope on a relatively straight and flat road should be between 1.5 and 2 percent, but this road's slope fluctuated between 3.5 and 5 percent. The expert initially stated that his figures were pursuant to national and state standards and later specified in a revised affidavit the particular standards utilized. Additionally, the Mahoning County Deputy Chief Engineer stated that a slope should run about one-quarter of an inch per foot, and testimony provided that the drop from the crown to the edge of the road was 11 inches on a ten-foot wide lane.

{¶ 26} This evidence would sufficiently establish an excessive side slope for purposes of avoiding summary judgment *only if the excessive side slope here were not a feature of the design or construction of the road as opposed to an obstruction or failure to repair.* Although the expert stated that the deterioration of the asphalt at the edge was the result of deterioration, no one alleged that the side slope was the result of that factor. Rather, Bonace claimed that the side slope existed as a construction feature in the past and worsened each time the township repaved the road.

{¶ 27} Notably, the Supreme Court's prior second-tier analysis concerning the nuisance element required the dangerous condition to be related to a failure to maintain rather than a feature of the road's design or construction. *Haynes,* 95 Ohio St.3d 344, 2002-Ohio-2334, 767 N.E.2d 1146, at ¶ 18 (which also involved redesign, reconstruction, and repaving). Although nuisance no longer provides an exception to immunity, after the statutory amendment, the immunity exception only got harder for the plaintiff to establish. See *Howard,* 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 311, at ¶ 26.

{¶ 28} The "in repair" portion of the immunity exception in R.C. 2744.02(B)(3) existed at the time of *Haynes,* and it still exists under the amended statute. Previously, both "nuisance" and "in repair" were part of the second tier. Just as the nuisance element did not include a claimed design or construction flaw, nor does the "in repair" element. Otherwise, *Haynes* would have discussed this element as well as nuisance. See *Haynes,* 95 Ohio St.3d 344, 2002-Ohio-2334, 767 N.E.2d 1146.

{¶ 29} Even without resorting to what *Haynes* did not say, "in repair" in its ordinary sense refers to maintaining a road's condition after construction or reconstruction, for instance by fixing holes and crumbling pavement. It deals with repairs after deterioration of a road or disassembly of a bridge, for instance. *Heckert v. Patrick* (1984), 15 Ohio St.3d 402, 406, 15 OBR 516, 473 N.E.2d 1204 (interpreting "in proper repair" in county-immunity statute). Consequently, "in repair" does not create a duty to change allegedly absurd designs such as extreme and unnecessary side slopes that were constructed (and recently reconstructed) into a road.

{¶ 30} Moreover, under the Supreme Court's recent *Howard* decision, the side slope would not fit within the alternative exception to immunity. That is, the side slope does not fall under the definition of an obstruction, as it does not block or clog the roadway. *Howard,* 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 311 at ¶ 30 (hindering or impeding use of road is insufficient). We thus conclude that the existence of the slope was not a failure to repair or a failure to remove an obstruction. Under the facts and circumstances presented in the summary judgment materials, the slope of the road is a design and construction feature

that was incorporated into the road's original construction and that remained a design and construction feature during subsequent repaving projects.

{¶ 31} We now turn to Bonace's complaints regarding the failure to make a berm and the failure to move the ditch. First, these conditions do not deal with the failure to make a repair, but rather constitute failures to construct or problems with design. Under the analysis set forth above, they would thus not fall under the exception to immunity regarding road care. Even under the prior, broader statute and *Haynes,* the exception to immunity would have been inapplicable due to the mere allegation of a failure to initially construct. In other words, there would be a nuisance under *Haynes* only if a previously constructed berm had not been kept in good repair.

{¶ 32} Second and regardless, the conditions concern items that are no longer part of the public road. Clearly, under the new definition of public road, ditches and berms are not encompassed in the immunity exception in R.C. 2744.02(B)(3). Finally, these conditions do not constitute obstructions, and they do not block or clog the roadway. See *Howard,* 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 311, at ¶ 30. Therefore, Bonace has not established an exception to the township's general immunity under the second tier of the analysis regarding the failure to provide a berm and the proximity of the ditch.

{¶ 33} This leads to Bonace's claim of crumbling of asphalt outside and into the white edge line. In order to determine the township's liability for this area, we must determine where the public road ends and where the berm, shoulder, or right of way begins on the road in question. The Supreme Court previously encompassed everything within the right-of-way as potentially destroying immunity. However, nuisance as an exception to immunity has been eliminated, and the public-roads definition specifically applicable to the immunity statutes has explicitly excluded berms, shoulders, and rights of way from the definition of public road. Thus, as used in Chapter 2744:

{¶ 34} " 'Public roads' means public roads, highways, streets, avenues, alleys, and bridges within a political subdivision. 'Public roads' does not include berms, shoulders, rights-of-way, or traffic control devices unless the traffic control devices are mandated by the Ohio manual of uniform traffic control devices." R.C. 2744.01(H).

{¶ 35} We note that there is no longer an immunity exception for problems with traffic-control devices unless those devices are mandated. So, for instance, one could not complain about a faded or absent edge line unless it was mandatory. See R.C. 4511.01(QQ) (traffic-control device defined as including markings placed for the purpose of warning or guiding traffic). Here, there is no claim that the white edge line was mandated on this road. Thus, Bonace cannot

complain, for instance, that a missing line misled her. Still, because we are speaking of paint, which can also exist as a warning within the lanes of travel, and because she is also complaining about a road condition that happens to exist within the paint, we continue to analyze whether the edge line carries the status of berm or shoulder. In doing so, we must also consider the status of the pavement to the right of the outside edge of the white edge line.

{¶ 36} Unlike Bonace, we do not interpret *Sech v. Rogers,* as holding that the berm or shoulder is only the nonpaved area next to the pavement or that the pavement to the right of the edge line is not berm or shoulder. See *Sech v. Rogers* (1983), 6 Ohio St.3d 462, 6 OBR 515, 453 N.E.2d 705. Before reviewing the case, we initially emphasize that it did not deal with application of the immunity statutes; rather, it dealt with whether a bus stayed within its proper path of travel.

{¶ 37} As for the procedural background, we acknowledge that after properly defining the relevant statutory terms such as roadway as not including the berm or shoulder, the trial court in *Sech* then seemed to state that the bus had the right of way if it was operating on the hard surface of the highway. Upon objection, the court clarified that hard means paved, rather than gravel, grass, or the berm.

{¶ 38} The Supreme Court noted that the trial court had originally defined the relevant terms in accordance with statute. Id. at 465, 6 OBR 515, 453 N.E.2d 705. The court continued to state that in its clarification, the trial court could have repeated the definition of laned highway. Id. The court concluded that the failure to do so was an omission but was not sufficiently confusing or ambiguous to mislead the jury and warrant reversal, noting that the additional instruction must be considered in conjunction with the original instruction, which contained proper definitions of roadway and laned highway. Id. We also note that the court had introduced the case by pointing out that reversible error does not consist of misstatements or ambiguity in a part of the instruction. Id. at 464, 6 OBR 515, 453 N.E.2d 705. The dissent merely disagreed with the majority's decision to find the misstatements nonprejudicial. Id. at 467–468, 6 OBR 515, 453 N.E.2d 705.

{¶ 39} From all of this, we conclude that *Sech* in fact held that the trial court's instruction contained a misstatement or ambiguity regarding the paved portion of the road, but decided that it was not prejudicial due to the original statutorily correct definitions. See *Siders v. Reynoldsburg School Dist.* (1994), 99 Ohio App.3d 173, 650 N.E.2d 150 (berm or shoulder includes paved portion to the right of white line). Cf. *Cupp v. Kudla,* 158 Ohio App.3d 728, 2004-Ohio-5528, 822 N.E.2d 392, ¶ 25 (a case not involving immunity that criticized *Siders* but found it

unnecessary to decide whether jury instructions on the "roadway" were legally correct).

{¶ 40} We note that at the same time as *Sech,* the Supreme Court reversed a dismissal that had granted immunity to the government. In that case, a motorcyclist had been injured by an 18–foot–long pothole to the right of the travel lanes on Interstate 77 in Canton. *Dickerhoof v. Canton* (1983), 6 Ohio St.3d 128, 6 OBR 186, 451 N.E.2d 1193. The court specifically called this area the shoulder, regardless of whether it was paved or not. Id. at 130, 6 OBR 186, 451 N.E.2d 1193, fn. 4.

{¶ 41} Unfortunately, shoulder and berm are not defined in the statutes. However, the common definition of shoulder is the area adjacent to or along the edge of a more important part, or more specifically, the part of the roadway outside of the traveled way. See Merriam–Webster's Online Dictionary. In this same dictionary, berm is then defined as the shoulder of a road. The space between the lines is the traveled way. See R.C. 4511.01(GG) and 4511.33(A).

{¶ 42} In addition, the manual regarding Uniform Traffic Control Devices contains definitions implying that the paved portion to the right of the edge line is considered berm or shoulder. For instance, the manual's definitions state that one of the places a rumble strip can exist is on the shoulder; however, if "shoulder" does not include the paved portion, this definition would make no sense, as a rumble strip is not placed in a grass or gravel shoulder.

{¶ 43} Contrary to the suggestions of Bonace, we do not believe that the asphalt to the right of the white edge line is still part of the public road. Rather, that pavement is considered berm or shoulder. Under the new limited definition of "public road," which excludes berm or shoulder, any asphalt missing from the space to the right of the edge line is covered by sovereign immunity.

{¶ 44} We also hold that the edge line itself also falls under the berm or shoulder category. Notably, *Sech* also found a lack of prejudice from the erroneous jury instruction because there was no evidence that the bus had operated "on or over the white line." *Sech,* 6 Ohio St.3d at 465, 6 OBR 515, 453 N.E.2d 705 (noting that the competing testimony required a belief either that the driver had properly operated the bus within her lane of travel or that she had totally left the pavement). We add here the fact that motorists are expected to stay within the marked lanes to the extent practicable. See R.C. 4511.33(A). To dispute any contention that the motorist is permitted to leave the lane if it is practicable, we point out that even when it would not be practicable to stay within the lane and thus when a motorist would be permitted (without receiving a marked-lanes citation) to leave the lane and enter a surrounding area such as a gravel berm, liability would not then extend to flaws in said gravel. The same analysis applies to the edge line itself.

{¶ 45} In conclusion, if there were no edge line on the road, then the public road could be considered to reach to the edge of the pavement. If said road is missing asphalt, it could be considered a failure to keep the public road in repair. However, by painting an edge line within which the public is to travel, the political subdivision can now limit its liability and provide itself guides within which its road repairs and obstruction removals must occur.

{¶ 46} We recognize that the failure to keep a road in repair involves no discretion, policy-making, or engineering judgment. *Franks v. Lopez* (1994), 69 Ohio St.3d 345, 349, 632 N.E.2d 502 (mentioning potholes). See also *Huffman v. Bd. of Cty. Commrs.*, 7th Dist No. 05CO71, 2006-Ohio-3479, 2006 WL 1851715, ¶ 59 (regarding decision whether to barricade bridge washed away by flood). However, because Bonace failed to overcome the second tier in the immunity analysis regarding a failure to keep the public road in repair or free from obstruction, the third tier regarding discretionary defenses does not arise.

{¶ 47} For all of the foregoing reasons, the township is immune from the claims of Bonace, which do not fall within the immunity exception provided in R.C. 2744.02(B)(3), as they do not involve the negligent failure to keep a public road in repair or free from obstruction. The judgment of the trial court is hereby reversed, and summary judgment is granted in favor of the township.

Judgment reversed.

DONOFRIO and WAITE, JJ., concur.