[Cite as *Silverman v. Cleveland*, 2021-Ohio-688.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

MITCHELL BENSON SILVERMAN,　　:

　　Plaintiff-Appellant,　　:

　　　　　　　　　　　　　　　　　　No. 109549

　　v.　　:

CITY OF CLEVELAND,　　:

　　Defendant-Appellee.　　:

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 11, 2021

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-907591

***Appearances:***

Paul V. Wolf and Daniel J. Klanowski, *for appellant.*

Barbara A. Langhenry, Cleveland Director of Law, and
Luke D. Mahoney, Assistant City Prosecutor, *for appellee.*

ANITA LASTER MAYS, P.J.:

## I.　Introduction and Background

{¶ 1}　Plaintiff-appellant Mitchell Benson Silverman ("Silverman") appeals

the trial court's grant of summary judgment in favor of defendant-appellee city of

Cleveland ("city") for injuries suffered when Silverman stepped into a pothole in downtown Cleveland. We affirm the trial court's judgment.

## II. Background and Facts

{¶ 2} Silverman and his wife were visiting from their home state of New Mexico. During the early to mid-afternoon hours of January 25, 2018, a sunny, clear and cold day, Silverman and his wife were returning to their hotel in downtown Cleveland from a grocery store near the intersection of West Ninth Street and St. Clair Avenue. The couple was walking southbound along the east side of West 6th Street. As they traversed the crosswalk at the intersection of West 6th Street and Frankfurt Avenue, Silverman stepped into a pothole that he alleges caused serious and permanent injuries. Silverman admitted that he was carrying two grocery bags in front of him at the time and that his attention was distracted by a couple who was also entering the intersection.

{¶ 3} The November 28, 2018 complaint alleged that the city negligently breached its duty under R.C. 2744.02(B)(3) to keep the public roadway free of obstructions and in good repair. The city denied liability and the affirmative defenses included political subdivision immunity under R.C. Chapter 2744.

{¶ 4} Discovery ensued and the city moved for summary judgment on October 18, 2019. The city argued that no issue of material fact existed that the city was entitled to sovereign immunity because it lacked actual or constructive notice of the pothole, which defeated Silverman's R.C. 2744.02(B)(3) negligence claim.

**{¶ 5}** Mitchell countered that: (1) discovery revealed that the city filled potholes on Frankfort Avenue between West 3rd and West 9th on January 4, 2017, September 17, 2017, and January 19, 2018, and the incident occurred on January 25, 2018; (2) a city employee stated at deposition that the pothole appeared to be an older pothole; and (3) Silverman's expert opined that a photograph of the pothole taken in April 2018, almost four months after the incident, depicted natural weathering that occurred over a long period of time.

**{¶ 6}** The trial court granted the city's motion. The instant appeal followed.

## III. Assignment of Error

**{¶ 7}** Silverman assigns a single error: the trial court erred to the prejudice of plaintiff-appellant in granting defendant-appellee's motion for summary judgment. We disagree.

## IV. Standard of Review

**{¶ 8}** Our review of summary judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241.

> Summary judgment is proper only when the movant demonstrates that, viewing the evidence most strongly in favor of the non-movant, reasonable minds must conclude that no genuine issue of material fact remains to be litigated, and the moving party is entitled to judgment as a matter of law. *Hoover v. Norfolk S. Ry. Co.*, [8th Dist.] Cuyahoga Nos. 93479 and 93689, 2010-Ohio-2894, ¶ 12, citing *Doe v. Shaffer*, 90 Ohio St.3d 388, 2000-Ohio-186, 738 N.E.2d 1243.

*Bland v. Ajax Magnethermic Corp.*, 8th Dist. Cuyahoga No. 95249, 2011-Ohio-1247, ¶ 7.

## V. Discussion

{¶ 9} R.C. Chapter 2744 exculpates political subdivisions of tort liability when performing governmental or proprietary functions, subject to the statutory exceptions. R.C. 2744.02(A)(1). Determination of immunity involves a tripartite inquiry. The first question is whether the political subdivision is involved in a governmental or proprietary function as defined by R.C. 2744.02(A)(1), establishing immunity.

{¶ 10} The second question is whether immunity is eliminated by the presence of one of the exceptions listed in R.C. 2744.02(B). In most cases, if immunity remains intact, there is no need to proceed to step three. If immunity is compromised, the final inquiry is whether immunity is reinstated by R.C. 2744.03(A). *See Maddox v. E. Cleveland*, 8th Dist. Cuyahoga No. 96390, 2012-Ohio-9, ¶ 17; *Jacobs v. Oakwood*, 8th Dist. Cuyahoga No. 103830, 2016-Ohio-5327, ¶ 9-11.

{¶ 11} The parties do not dispute that the city has immunity under R.C. 2744.01(A)(1) or that the immunity exception under R.C. 2744.02(B)(3) is the statutory analysis that governs this case. R.C. 2744.02(B)(3) "provides that a political subdivision may be liable for 'negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads * * *.'" *Leslie v. Cleveland*, 2015-Ohio-1833, 37 N.E.3d 745, ¶ 11 (8th Dist.), quoting R.C. 2744.02(B)(3).

**{¶ 12}** This court has "interpreted R.C. 2744.02(B)(3) to contain two exceptions to sovereign immunity." *Id.*, citing *Todd v. Cleveland*, 8th Dist. Cuyahoga No. 98333, 2013-Ohio-101, ¶ 13-14. "Upon giving effect to all of the words in the statute, the terms 'in repair' and 'obstruction' exist separately and provide two independent bases for abrogating immunity." *Id.*, quoting *Todd* at ¶ 14, citing *Bonace v. Springfield Twp.*, 179 Ohio App.3d 736, 2008-Ohio-6364, 903 N.E.2d 683, ¶ 29 (7th Dist.), *Crabtree v. Cook*, 196 Ohio App.3d 546, 2011-Ohio-5612, 964 N.E.2d 473, ¶ 27 (10th Dist.).

**{¶ 13}** "[A]n 'obstruction' is an impediment that 'blocks or clogs the roadway and not merely a thing or condition that hinders or impeded the use of the roadway or that may have the potential to do so.'" *Leslie* at ¶ 12. On the other hand, "'in repair' has been interpreted to include 'fixing holes or crumbling pavement.'" *Id.* at ¶ 14, quoting *Todd* at ¶ 15, citing *Crabtree*, 196 Ohio App.3d 546, 2011-Ohio-5612, 964 N.E.2d 473, ¶ 27, citing *Bonace,* 179 Ohio App.3d 736, 2008-Ohio-6364, 903 N.E.2d 683, ¶ 29.

**{¶ 14}** "Cities have a duty to repair roads that have deteriorated into a potentially hazardous condition." *Leslie* at ¶ 14. "If the city's 'negligent failure to keep public roads in repair' resulted in the hazardous pothole that allegedly caused [the plaintiff's] injuries, the city could be liable under R.C. 2744.02(B)(3)." *Id.*

**{¶ 15}** As Silverman acknowledges, we must address whether Silverman "has set forth sufficient facts to create a genuine issue as to the city's negligence." *Leslie*, 2015-Ohio-1833, 37 N.E.3d 745, at ¶ 15. R.C. 2744.02(B)(3). Silverman must

establish the existence of a duty, a breach of that duty, the proximate cause of the breach, and damages to support a claim of negligence. *Id.* at ¶ 16.

**{¶ 16}** A political subdivision is required to exercise a standard of care "'that care which persons of reasonable and ordinary prudence exercise under like circumstances and conditions.'" *Gomez v. Cleveland*, 8th Dist. Cuyahoga No. 97179, 2012-Ohio-1642, ¶ 6, quoting *Taylor v. Cincinnati*, 143 Ohio St. 426, 447, 55 N.E.2d 724 (1944).

**{¶ 17}** The liability of a municipality for breach of the duty to alleviate a faulty road issue "'arises only upon proof that its agents or officers actively created the faulty condition, or that it was otherwise caused and the municipality has actual or constructive notice of its existence.'" *Id.* at ¶ 7, quoting *Cleveland v. Amato*, 123 Ohio St. 575, 176 N.E. 227 (1931). Generally, notice that is communicated directly to or received by a responsible party constitutes "actual notice." *Jenkins v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 12AP-787, 2013-Ohio-5106, ¶ 12; *Amato* at 577.

> "There is constructive knowledge where the nuisance existed in such a way that it could or should have been discovered, that it existed for a sufficient length of time to have been discovered, and that if it had been discovered it would have created a reasonable apprehension of a potential danger." *Kertesz* [*v. Fulton Cty.*, 6th Dist. Fulton No. F-05-026, 2006-Ohio-3178,] ¶ 20.

*Gomez* at ¶ 7.

**{¶ 18}** The trial court determined that the city "had no actual or constructive notice of the existence of the alleged pothole prior to the time plaintiff tripped and

fell, i.e. January 25, 2018." Journal entry No. 112274709, p. 1 (Jan. 30, 2020). "Therefore, the defendant city of Cleveland is granted immunity under R.C. [Chapter] 2744, and defendant's motion for summary judgment is granted." *Id.*

**{¶ 19}** The city confirms that the Joseph L. Stamps Station district garage ("Stamps District") is responsible for roadway maintenance for streets located from west to east from the west bank from the flats through East 105th Street and north to south from Lake Erie through Woodland Avenue. The district includes the area where Silverman was allegedly injured.

**{¶ 20}** In support of summary judgment, the city provided an affidavit and service record exhibits from foreman Kenneth Cenname ("Cenname") who supervised street maintenance and repair for the Stamps District. His duties included:

> performing visual inspections of roadways to identify street maintenance and repair issues on roadways located within the Stamps District's assigned region; assigning other personnel in the Division of Streets to conduct visual inspections of roadways located within the Stamps District; receiving notice of roadway service requests and assigning said service requests to personnel within the Division of Streets as work-orders to perform roadway maintenance and/or repair work for the reported area; and record keeping for the City's Division of Streets.

Cenname Affidavit, ¶ 4.

**{¶ 21}** Cenname explained:

> The City receives notice of roadway service requests in the following ways: as reported by a Division of Streets employee (including myself) after having performed a visual inspection of a roadway; through citizens of Cleveland or the public at large who call and report roadway maintenance issues through the City's "311" reporting system — which

is a City operated call center designed to provide information and take service requests from the citizens of Cleveland; or from internal reporting — such as reports provided by a City employee or City Department/Division outside of the City's Division of Streets.

Cenname Affidavit, ¶ 5.

{¶ 22} Cenname described the city's street maintenance and repair protocol and averred that based on the records of maintenance and repairs for the period January 26, 2016, through January 26, 2018, the city had not received notice of problems or issues regarding the portion of Frankfort Avenue in issue. Cenname confirmed, as Silverman asserts, that permanent patches were applied to "any and all visible potholes in the area on January 19, 2018," just a week prior to the alleged incident. Cenname also stated that the repairs that were made were not as the result of any advisements or requests. Cenname Affidavit, ¶ 8. "The City did not receive notice of any problems or issues pertaining to this portion of Frankfort Avenue at any relevant time on or before January 26, 2018." Cenname Affidavit, ¶ 9.

{¶ 23} Finally, Cenname stated that the first complaint regarding a defect or pothole in the area in issue was received on April 19, 2018, three months after the incident in this case. The motion was also supported with the records referenced by Cenname and a copy of discovery produced by the city and executed by Cenname.

{¶ 24} Silverman counters that Cenname's admission that something may possibly have been missed though an area is recorded as complete creates a genuine issue of material fact. Silverman also points to Cenname's testimony that the pothole depicted in the photograph was significant and would be deemed a priority

because of size and location. In addition, Silverman cites the testimony of John Gunn, a foreman with the Stamps District, who testified that the absence of large chunks of asphalt around or inside of the posthole indicates the pothole may have been an older pothole.

{¶ 25} Silverman's expert Richard L. Zimmerman ("Zimmerman") whose expertise included supervision and inspection of repaired asphalt paving of parking lots, roadways, and crosswalks, issued an affidavit. Zimmerman concluded that the pothole was the diameter of a basketball, about four inches deep and "could have feasibly developed only over an extended period of at least several weeks or longer." Zimmerman Affidavit, ¶ 12.

{¶ 26} A complainant must introduce evidence to overcome summary judgment that demonstrates:

> "(1) the unsafe condition must have existed in such a manner that it could or should have been discovered, (2) the condition existed for such a length of time to have been discovered, and (3) if it had been discovered, it would have created a reasonable apprehension of potential danger or an invasion of private rights."

*Gomez*, 8th Dist. Cuyahoga No. 97179, 2012-Ohio-1642, ¶ 7, quoting *Nanak v. Columbus*, 121 Ohio App.3d 83, 86, 698 N.E.2d 1061 (10th Dist.1997), citing *Beebe v. Toledo*, 168 Ohio St. 203, 151 N.E.2d 738 (1958), paragraph two of the syllabus.

{¶ 27} Silverman, Silverman's expert, and the city's witnesses reviewed and testified regarding Silverman's photographs of the potholes. The city argues that the photographs were taken between 35 and 65 days after the January 25, 2018 incident

based on Silverman's sworn interrogatory response that the photograph was taken in March 2018 by Silverman's counsel. The city adds that the photographs do not provide for scale of the dimensions of the pothole.

{¶ 28} The remaining evidence proffered by Silverman is that the city may have missed the pothole based on the statement that it was "possible." We find that Silverman has failed to provide evidence sufficient to demonstrate the existence of a genuine issue of material fact on the issue of notice pursuant to R.C. 2744.02(B)(3).

{¶ 29} The single assigned error is overruled.

## VI. Conclusion

{¶ 30} The trial court's judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, PRESIDING JUDGE

LARRY A. JONES, SR., J., and
EMANUELLA D. GROVES, J., CONCUR