[Cite as *State ex rel. Slacas v. KCI Technologies, Inc.*, 2022-Ohio-4573.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| STATE OF OHIO ex rel.<br>KATHLEEN SLACAS, et al., | **CASE NO. 2022-P-0012** |
| Plaintiffs-Appellees, | Civil Appeal from the<br>Court of Common Pleas |
| - vs - | |
| KCI TECHNOLOGIES, INC., et al., | Trial Court No. 2014 CV 00572 |
| Defendants, | |
| PORTAGE COUNTY ENGINEER, et al., | |
| Defendants-Appellants. | |

# O P I N I O N

Decided: December 19, 2022
Judgment: Affirmed in part, reversed in part, and remanded

*Thomas J. Connick*, Schneider, Smeltz, Spieth, Bell, LLP, 1375 East Ninth Street, Suite 900, Cleveland, OH 44114 and *Edward A. Proctor*, Kim and Associates, 4100 Embassy Parkway, Suite 200, Akron, OH 44333 (For Plaintiffs-Appellees).

*Victor V. Vigluicci*, Portage County Prosecutor, and *David J. Garnier*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 and *John D. Pinzone* and *Frank H. Scialdone*, Mazanec, Raskin & Ryder Co., LPA, 100 Franklin's Row, 34305 Solon Road, Cleveland, OH 44139 (For Defendants-Appellants).

MATT LYNCH, J.

{¶1} Defendants-appellants, the Portage County Engineer; County of Portage, Ohio; and the Portage County Board of Commissioners (the "Portage County defendants") appeal the decision of the Portage County Court of Common Pleas denying them the benefit of political subdivision immunity under R.C. Chapter 2744 with regard to

certain tort claims. For the following reasons, we affirm in part and reverse in part the decision of the court below and remand for further proceedings consistent with this Opinion.

{¶2} On July 16, 2014, plaintiffs-appellees, Jessica L. Ayers and other representative plaintiffs, filed a Class Action Complaint against KCI Technologies, Inc.; MS Consultants, Inc.; Oscar Brugmann Sand & Gravel, Inc.; Todd Brugmann; the Portage County Engineer; County of Portage, Ohio; Romano & Sons Nursery; Pasquale Romano; and Michael Marozzi. The plaintiffs are or have been at relevant times residents or property owners in the Aurora East Subdivision, Shalersville Township, Portage County. With respect to the Portage County defendants, the Complaint alleged as follows:

> Plaintiffs, on behalf of themselves and Class of similarly situated persons defined below, bring this suit to seek redress for negligence, continuing nuisance, continuing trespass, Unconstitutional Taking under both the Ohio and Federal Constitutions, Writ of Mandamus for Inverse Condemnation, and injunctive and declaratory relief. * * * Plaintiffs have * * * been and continue to be damaged by the negligence, reckless, willful and wanton actions of the Portage County Engineer's negligent failure to properly operate, maintain and/or upkeep the Aurora East Storm Drainage Sewer System, Aurora East roadways, and the drainage from the aforementioned swamp area that the county has negligently maintained and alleged unreasonable amounts of water to be diverted directly into the Aurora East Subdivision. [Sic] Additionally, the Portage County engineer has acted with wanton, willful and reckless disregard for the rights of the Aurora East residents and property owners. Alternatively, Plaintiffs are entitled to fair and just compensation for the County of Portage, Ohio's unconstitutional taking of their properties under both the Ohio and Federal Constitution.

{¶3} In the course of the subsequent litigation, the plaintiffs dismissed KCI Technologies, MS Consultants, Todd Brugmann, Romano & Sons Nursery, and Michael

2

Marozzi as defendants. The Portage County Board of Commissioners was subsequently added as a defendant.

{¶4} On November 1, 2018, the trial court certified the following class: "All persons who own or owned real property in the East Aurora Subdivision at any time since 1998 and whose property suffered excessive flooding and/or whose property was unduly taken or otherwise adversely affected due to any actions on the part of Defendants causing alterations of surface water through the Subdivision." Class certification was affirmed on appeal by this court in *Ayers v. KCI Technologies, Inc.*, 2019-Ohio-3614, 131 N.E.3d 1015 (11th Dist.).

{¶5} On June 24, 2021, the Portage County defendants filed a Motion for Summary Judgment, inter alia, on the grounds that they were entitled to political subdivision immunity with respect to plaintiffs' claims for negligence, trespass, and nuisance. The plaintiffs filed a Brief in Opposition on September 15, 2021. And, on September 30, 2021, the Portage County Defendants filed a Reply in Support of Summary Judgment.

{¶6} On January 12, 2022, the trial court issued an Order and Journal Entry denying the Motion for Summary Judgment. The Entry did not directly address the issue of political subdivision immunity. Rather, it stated:

> A review of the briefs submitted by the parties reveals a number of genuine issues of material fact relating to alleged actions and/or inactions of the Defendants, whether the damages allegedly suffered by the Plaintiffs were proximately caused by said actions and/or inactions, and whether the claims of the Plaintiffs, if any, fall within the applicable statutes of limitations set forth in the Ohio Revised Code. * * * As there are genuine issues of material fact and that alternate conclusions may be made from the evidence presented in the Defendant Portage County Engineer, Portage County, Ohio, and the Portage County Board of Commissioners' Motion for Summary

3

Judgment, Plaintiffs' Brief in Opposition, and Defendant Portage County's Reply Brief in support of its Motion, Defendants Portage County's Motion for Summary Judgment must be denied.[1]

{¶7} On February 10, 2022, the Portage County defendants filed a Notice of Appeal. On appeal, they raise the following assignment of error: "The lower court denied the benefit of immunity to defendants/appellants under Chapter 2744 of the Ohio Revised Code."

{¶8} "Whether a party is entitled to immunity is a question of law properly determined by the court prior to trial pursuant to a motion for summary judgment." *Pelletier v. Campbell*, 153 Ohio St.3d 611, 2018-Ohio-2121, 109 N.E.3d 1210, ¶ 12.

{¶9} "The review of a summary judgment denying political-subdivision immunity is de novo and is governed by the summary-judgment standard set forth in Civ.R. 56." *Id.* at ¶ 13. "Summary judgment may be granted when '(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.'" (Citations omitted.) *Id.*

{¶10} Pursuant to Ohio's Political Subdivision Tort Liability Act, "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary

---

1. This language is from an Order and Journal Entry *Nunc Pro Tunc* issued on April 15, 2022, which included the Portage County Board of Commissioners as defendants.

4

Case No. 2022-P-0012

function." R.C. 2744.02(A)(1). "[P]olitical subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." R.C. 2744.02(B)(2). *See Pelletier* at ¶ 15 (describing the "familiar, three-tiered analysis" for determining whether a political subdivision is immune from tort liability pursuant to R.C. Chapter 2744).

{¶11} "The provision or nonprovision, planning or design, construction, or reconstruction of a public improvement, including, but not limited to, a sewer system" is a governmental function. R.C. 2744.01(C)(2)(l). "The maintenance, destruction, operation, and upkeep of a sewer system" is a proprietary function. R.C. 2744.01(G)(2)(d). Consistent with these definitions, Ohio "courts of appeals have developed a body of law holding that subdivisions are immune from claims that flow from the design and construction of a sewer system." *Coleman v. Portage Cty. Engineer*, 133 Ohio St.3d 28, 2012-Ohio-3881, 975 N.E.2d 952, ¶ 19, citing *Spitzer v. Mid Continent Constr. Co., Inc.*, 8th Dist. Cuyahoga No. 89177, 2007-Ohio-6067, ¶ 20 ("Ohio courts have found that municipalities are immune from suit when flooding to private property was a result of an improperly designed sewer that was inadequate to handle increased storm runoff").

{¶12} On appeal, the Portage County defendants assert that they are "entitled to R.C. Chapter 2744 immunity on the state law tort claims for negligence, trespass, nuisance, and the state taking claim for direct monetary damages." Brief of Appellants at 11. They characterize the plaintiffs' claims of liability as being essentially based on the County's failure to upgrade the sewer system in the East Aurora Subdivision. Relying on *Coleman*, the Portage County defendants maintain that the failure to upgrade a sewer system constitutes the construction or design of a system and, thus, is a governmental

5

Case No. 2022-P-0012

function.  *Coleman* at ¶ 1 ("because upgrading involves construction and design, such upgrading is a governmental, not a proprietary, function").

{¶13}  To the contrary, the plaintiffs assert that "[t]he repeated flooding in the Subdivision that is the subject of this case was caused by design, construction, and *lack of maintenance* issues as described in [their] expert reports."  Brief of Appellees at 8. The causes of flooding, as identified by the expert report, are summarized as follows:

> [1.[2]] Portage County and the Portage County Engineer failed to obtain easements, and design and construct the berms, swales, inlets, and pipe connections from the adjoining upland drainage areas to the existing Subdivision storm drainage system.  As such, flooding occurs because drainage from adjoining upland property to the east and west occurs as sheet flow in an undirected and uncontrolled manner into the Subdivision.  Problem areas include Greenwich, Field, and Nolte Streets.

> [2.] Portage County and the Portage County Engineer failed to obtain easements, and design and construct the berm, ditch and pipe needed to re-route the swamp ditch to a storm drainage pipe at the west end of Invernest Street.  The swamp ditch carries a large drainage flow rate in wet weather that currently discharges into the Subdivision storm drainage system at Hadley Street, overloads the Subdivision storm drainage system, and floods the Subdivision.

> [3.] Portage County and the Portage County Engineer failed to maintain the Subdivision drainage system causing flooding.  This maintenance involved the cleaning of the Bartlett Road trash rack, repair of the driveway culverts, and clearing of ditches and catch basin gratings.  Michael Marozzi, the Portage County Engineer, admitted in his deposition that his department only performs storm drainage system maintenance after complaints are lodged which typically is after flooding has occurred.

> [4.] Portage County, the Portage County Engineer and Romano have failed to maintain the 8-inch drainage pipe from the Romano property to the catch basin at the west end of Greenwich Street.  This lack of

---

2.  The alleged causes of flooding have been identified numerically for ease of discussion.

6

Case No. 2022-P-0012

maintenance is a cause of flooding in the Subdivision on the north side of Greenwich Street.

[5.] Portage County and the Portage County Engineer built a berm along the Romano property line at the end of Greenwich Street that makes flooding worse in the Subdivision on the north side of Greenwich Street.

[6.] Portage County and the Portage County Engineer have allowed filling of an overflow "saddle" along the swamp ditch near the west end of Invernest Street. The filling occurred in about 2010 and has increased the drainage flow rates being discharged in wet weather into the Subdivision storm drainage system at Hadley Street and increased flooding in the Subdivision.

[7.] Portage County and the Portage County Engineer paved the roads in the Subdivision in about 1999 and raised the roads 2 to 3-inches. Some homes in the Subdivision have slab elevations that are now below the road levels. Flooding has increased for these homes because the roads were raised.

Expert Report of Karen E. Ridgway, P.E. at 5-6.

{¶14} The majority of the causes identified by the plaintiffs clearly pertain to the provision or nonprovision, planning or design, construction, or reconstruction of the sewer system for the East Aurora Subdivision. Accordingly, they are classified as a governmental function for which the Portage County defendants are entitled to tort immunity apart from their takings claims.

{¶15} The first two causes are premised on the Portage County defendants' failure to implement certain recommendations contained in a 1974 drainage study performed by the Mosure-Fok & Syrakis Company (MFS). The MFS study recognized that an effective storm sewer system would need to be able to intercept drainage from adjoining upland properties. When the existing drainage system was designed and built between 1993

7

and 1999, several of these recommended features were not included. The expert report states:

> ***Not all elements required for a complete and functioning storm drainage system in the Subdivision were designed and built by * * * Portage County and the Portage County Engineer from 1993 through 1999.*** * * * MFS recognized that the new Subdivision storm sewers in all road rights-of-way needed to extend to the east and west to intercept drainage from the adjoining upland property. This intent was clearly stated and shown in the MFS report but did not occur in the design and construction of the new Subdivision storm drainage system.

(Emphasis sic.)

{¶16} In distinguishing the governmental design and construction of a sewer system from the proprietary maintenance of the system, the Ohio Supreme Court adopted the following: "A complaint is properly characterized as a maintenance, operation, or upkeep issue when 'remedying the sewer problem would involve little discretion but, instead, would be a matter of routine maintenance, inspection, repair, removal of obstructions, or general repair of deterioration.' *Essman* [*v. Portsmouth*, 4th Dist. No. 09CA3325, 2010-Ohio-4837] at ¶ 32. But the complaint presents a design or construction issue if 'remedying a problem would require a [political subdivision] to, in essence, redesign or reconstruct the sewer system.' *Essman* at ¶ 32-33." (Citation omitted.) *Coleman*, 133 Ohio St.3d 28, 2012-Ohio-3881, 975 N.E.2d 952, at ¶ 30.

{¶17} Here, the remedy for the first two causes of flooding would require the Portage County defendants to redesign and reconstruct the sewer system in accordance with the recommendations from the MFS report. Thus, they present design and construction issues for which the Portage County defendants enjoy immunity.

Case No. 2022-P-0012

{¶18} The third cause of flooding properly states a maintenance issue for which the Portage County defendants do not have immunity. According to the expert report, there is a trash rack located at the upstream end of a culvert running underneath Bartlett Road in the Subdivision. The rack requires "frequent cleaning" to avoid having water diverted from the culvert over the road. The rack has been reported as blocked during three identified flooding events. The necessity of keeping the rack free from obstruction is a non-discretionary act of routine maintenance and, thus, a proprietary function.

{¶19} The fourth and fifth causes of flooding are described in the expert report as follows:

> An 8-inch diameter pipe runs from a hole in a low-lying area on the [adjoining] Romano property near Greenwich Street * * *. It is not known who designed or constructed the 8-inch pipe, but it is obviously not properly sized for the drainage area served. The pipe appears to drain from a hole in the ground on Romano's property and the pipe is plugged with earth at the hole. * * * A berm was constructed by Portage County and the Portage County Engineer west of the catch basins at the end of Greenwich Street along the Romano property line * * *. [This berm] directs storm drainage overflow * * * into the backyards of the homes on the north side of Greenwich Street. The berm makes the flooding worse in the Subdivision.

{¶20} The failure to maintain the 8-inch pipe, i.e., the pipe is plugged with earth and/or has deteriorated, presents a proprietary issue and, thus, the Portage County defendants were properly denied immunity as to that precise issue (as distinct from design issues relating to pipe size or configuration). *Pierce v. Gallipolis*, 2015-Ohio-2995, 39 N.E.3d 858, ¶ 24 (4th Dist.) (immunity did not apply where the plaintiffs alleged "that their claimed injuries resulted from appellant's alleged failure to repair damage to the sewer line, to inspect it, to remove obstructions, or to remedy general deterioration"). We

9

are cognizant that there is an issue as to whether these defendants have any duty to maintain the pipe inasmuch as there is no evidence that they constructed or designed the pipe and as the pipe is on private property. Such issues involving the merits of the plaintiffs' claims, however, are not properly before this court at this time. Only that part of the trial court's order denying the Portage County defendants immunity constitutes the final order and so may be raised in an interlocutory appeal. R.C. 2744.02(C) ("[a]n order that denies a political subdivision * * * the benefit of an alleged immunity from liability * * * is a final order"); *Reinhold v. Univ. Hts.*, 8th Dist. Cuyahoga No. 100270, 2014-Ohio-1837, ¶ 21 ("[a]n appeal from a denial of summary judgment based on sovereign immunity is limited to the review of alleged errors in the portion of the trial court's decision that denied the political subdivision the benefit of immunity"); *Brown v. Cincinnati*, 2020-Ohio-5418, 162 N.E.3d 1274, ¶ 6-7 (1st Dist.) (R.C. 2744.02(C) does not provide for appellate review of all interlocutory matters).

{¶21} As for the pipe not being properly sized and as for the berm diverting overflow into backyards, these issues would require the Portage County defendants to redesign or reconstruct those portions of the sewer system. Thus, for the reasons given above, the defendants have immunity with respect to these issues regarding the tort claims that stand apart from the takings issues implicated by plaintiffs' mandamus claim seeking initiation of appropriations proceedings.

{¶22} The sixth cause of flooding concerns a "saddle" or topographical "low point" existing next to a ditch which drains water from a swamp area to the west of the Subdivision. According to plaintiffs' expert, when the ditch would overflow under high flow conditions, the saddle would receive some of the overflow thereby decreasing the water

10

flow into the Subdivision. At some time between 2010 and 2011, two to three feet of fill were added to the saddle negating its ability to reduce overflow into the Subdivision. It appears that the saddle exists on private property and was not part of the system constructed between 1993 and 1999. The expert report states that the Portage County defendants have the authority "to demand that upland property owners remove fill and restore drainage patterns if the fill is increasing the downstream flooding." The report continues: "A properly designed and constructed ditch, berm, and storm drainage pipe from the swamp ditch to the existing storm drainage pipe at the west end of Invernest Street could mitigate this issue."

{¶23} The failure to incorporate the saddle and/or swamp ditch into the existing drainage system constitutes a governmental function for the reasons set forth above in connection with the first two causes, i.e., the remedy would require the redesign or reconstruction of the existing system. We construe the failure to have the fill removed from the saddle to be unrelated to either the construction or the maintenance of the sewer system. Rather, the plaintiffs are essentially charging the Portage County defendants with failing to abate a nuisance on private property. It is generally recognized that "[a]batement of a public nuisance is a governmental function." *O'Farrell v. Harlem Twp. Bd. of Trustees*, 5th Dist. Delaware Nos. 18 CAH 08 0059 and 18 CAH 08 0062, 2019-Ohio-1675, ¶ 36; *Oliver v. Marysville*, 3d Dist. Union No. 14-18-01, 2018-Ohio-1986, ¶ 26 ("it is well-settled that abating a nuisance is a governmental function"). Regardless of whether the sixth cause is considered a failure of design or a failure to abate a nuisance, the Portage County defendants enjoy immunity.

11

{¶24} The seventh cause of flooding claims that, sometime around 1999, the subdivision roads were improved and the pavement raised two to three inches. This put the elevation of the roads above that of the floor slabs of certain low-lying homes thereby increasing their susceptibility to flooding. As with the sixth cause, and for purposes of non-takings tort claim analysis, the elevation of the roads is not formally part of the drainage system and the question of whether the repaving is a design or maintenance issue is inapposite. Relevant to this cause, "the maintenance and repair of * * * roads" are governmental functions. R.C. 2744.01(C)(2)(e). However, "political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads." R.C. 2744.02(B)(3).

{¶25} The plaintiffs maintain "that paving and height/depth of roads raises a question of fact as to whether and when that work was performed constitutes 'in repair' for purposes of R.C. 2744.02(B)(3)." Brief of Appellees at 25. The argument is unconvincing. Repaving the subdivision roads because they have deteriorated on account of flooding, as claimed by the plaintiffs, constitutes the maintenance and repair of roads, not the negligent failure to keep roads in repair. Stated otherwise, the plaintiffs' argument is that the Portage County defendants negligently maintained or repaired the roads, not that they negligently failed to do so. The distinction is material. It has been held that "'in repair' in its ordinary sense refers to maintaining a road's condition after construction or reconstruction, for instance by fixing holes and crumbling pavement." *Bonace v. Springfield Twp.*, 179 Ohio App.3d 736, 2008-Ohio-6364, 903 N.E.2d 683, ¶ 29 (7th Dist.). "Consequently, 'in repair' does not create a duty to change allegedly absurd

12

designs such as extreme and unnecessary side slopes that were constructed * * * into a road." *Id.*

{¶26} For example, in *Keller v. Carroll Cty. Bd. of Commrs.*, 2022-Ohio-3526,198 N.E.3d 155 (7th Dist.), the appellant claimed that he was injured by loose stone from the county's road resurfacing so that an issue of material fact existed as to whether the road was "in repair" for purposes of R.C. 2744.03(B)(3). *Id.* at ¶ 11. The court of appeals held "this exception does not apply here; Blade Road was in good condition and was also neither disassembled nor deteriorated at the time and location of Appellant's accident." *Id.* at ¶ 21. Rather, "some amount of loose gravel is a characteristic of a road that has been recently resurfaced via the chip and seal process," therefore, "the presence of loose stone does not reflect that Blade Road was a road in disrepair such that this exception to immunity applies." *Id.* at ¶ 28. In contrast, this court in *Lakota v. Ashtabula*, 11th Dist. Ashtabula No. 2015-A-0010, 2015-Ohio-3413, found the city could be liable for injuries caused by a sinkhole in a public road while the city was in the process of repairing the road. We held that "the exception to immunity can apply when the city negligently fails to keep the road in repair during ongoing construction." *Id.* at ¶ 33. Stated otherwise, "[a] repair that causes an additional danger to drivers cannot create a road that is 'in repair.'" *Id.* at ¶ 30. We distinguished the *Bonace* case in *Lakota* by noting that "the issue is not the design of the road but the condition of the road caused by a sinkhole and an incomplete repair." *Id.* at ¶ 28. Similarly, in *Volny v. Portage Cty.*, 2022-Ohio-338, 184 N.E.3d 925 (11th Dist.), this court held that the county could be liable where a motorist was injured by a hole in an asphalt-filled trench in the road created by the county in the course of replacing a crossover pipe. *Id.* at ¶ 43. In *Volny*, we affirmed that the "in repair"

13

exception to the county's immunity was applicable. We distinguished *Bonace* because the issue in *Volny* was "not the county's design of the road." *Id.* at ¶ 46. Rather, "[t]he asphalt-filled trench was not a design feature," but "a temporary condition awaiting final repair, i.e., paving." *Id.* In the present case, the increased elevation of the subdivision roads is a design feature and, thus, the "in repair" exception to the Portage County defendants' immunity does not apply. *Note Pelletier*, 153 Ohio St.3d 611, 2018-Ohio-2121, 109 N.E.3d 1210, at ¶ 19 ("the duty to keep roads in repair did not extend to 'matters unrelated to actual roadway conditions,' such as tree limbs overhanging a county road") (citation omitted).

{¶27} Thus, it is established that the Portage County defendants are entitled to immunity except to the extent that they may be liable for failing to maintain, i.e., keep free of obstruction and deterioration, the trash rack at the Bartlett Road culvert and the pipe connecting to the Greenwich Street drainage intercept. *Bernard v. Cincinnati*, 2019-Ohio-1517, 135 N.E.3d 485, ¶ 32 (1st Dist.) ("[a] comprehensive and integrated review of the record demonstrates * * * that a total sewer system overhaul, and not regular, routine maintenance, is the only possible answer (if any) to the [plaintiffs'] unfortunate predicament"); *Jochum v. Jackson Twp.*, 5th Dist. Stark No. 2013CA00013, 2013-Ohio-3592, ¶ 22 (township was "immune from liability with respect to appellant's claims alleging trespass, nuisance and negligence" where the "appellant, in his complaint, alleged that [the township] failed to maintain the pipeline by replacing individual pipes 'to a size appropriate to manage the increased water flow'").

{¶28} The final issue, then, is whether there are any statutory defenses that would restore the Portage County defendants' immunity with respect to these maintenance

14

issues. *Pelletier* at ¶ 15. A "political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner." R.C. 2744.03(A)(5). It is fairly established, however, that the performance of routine maintenance, such as the Portage County defendants are potentially liable for failing to perform, does not involve the exercise of judgment or discretion. Accordingly, they are not entitled to discretionary immunity. *Economus v. Independence*, 2020-Ohio-266, 151 N.E.3d 1046, ¶ 21 (8th Dist.) ("Ohio courts have held that the decision to provide maintenance and repair to a sewer system does not involve the exercise of discretion that would reinstate immunity under R.C. 2744.03(A)(5)") (cases cited); *Coleman*, 133 Ohio St.3d 28, 2012-Ohio-3881, 975 N.E.2d 952, at ¶ 19; *Perkins v. Norwood City Schools*, 85 Ohio St.3d 191, 193, 707 N.E.2d 868 (1999).

{¶29} Our holding applies to the plaintiffs' tort claims for negligence, trespass, and nuisance. On appeal, the Portage County defendants argue that political subdivision immunity applies to the plaintiffs' claim against Portage County for inverse condemnation pursuant to Article I, Section 19, of the Ohio Constitution (Count V). In briefing and at oral argument, they concede that immunity does not apply to takings claims, but assert that it does to Count V because the plaintiffs are "seeking direct monetary damages for inverse condemnation." Reply Brief of Appellants at 10. The Portage County defendants cite no authority in support of this proposition. Moreover, they did not raise this argument before the trial court, but, instead, only argued in their Motion for Summary Judgment that

15

Case No. 2022-P-0012

immunity applied to the plaintiffs' negligence, trespass, and nuisance claims. Given plaintiffs' failure to raise it in the trial court, we decline to address it for the first time on appeal.[3]

{¶30} To the extent indicated above, the sole assignment of error is with merit.

{¶31} For the foregoing reasons, the Order and Journal Entry of the Portage County Court of Common Pleas, denying the Portage County defendants the benefit of political subdivision immunity, is affirmed in part and reversed in part. Apart from and without regard to the inverse condemnation claims, the Portage County defendants are entitled to immunity with respect to plaintiffs' claims for negligence, trespass, and nuisance except to the extent that these claims are based on their alleged failure to maintain, i.e., keep free of obstruction and deterioration, the trash rack at the Bartlett Road culvert and the pipe connecting to the Greenwich Street drainage intercept. This matter is remanded for further proceedings consistent with this Opinion. Costs to be taxed between the parties equally.


JOHN J. EKLUND, P.J.,

FREDERICK D. NELSON, J., Ret., Tenth Appellate District, sitting by assignment,

concur.

---

3. In footnote 2 on page 3 of the Brief of Appellees, it is stated that the unconstitutional takings claims as well as a claim for inverse condemnation under Ohio law "are not part of the present appeal." In footnote 4 on page 11, it is stated that "inverse condemnation and similar direct actions to obtain compensation for an alleged taking of private property are not recognized in Ohio" and so "Count V must be dismissed as a matter of law." It is only in the Reply Brief of Appellees that it is directly asserted that political subdivision immunity applies to inverse condemnation claims.

Case No. 2022-P-0012